OPINION
{¶ 1} Defendant-appellant, Joseph Fintel (hereinafter "Joseph"), appeals the judgment of the Seneca County Court of Common Pleas, Juvenile Division, dismissing him as a party to a complaint filed by plaintiff-appellee, Seneca County Department of Job and Family Services (hereinafter "SCDJFS"), alleging that Dylan Fintel (hereinafter "Dylan") was a dependent child pursuant to R.C. 2151.04(C). For reasons that follow, we affirm.
 {¶ 2} Joseph began a relationship with Jamie Fintel (hereinafter "Jamie") sometime in 2001. On February 13, 2003, Jamie gave birth to Dylan. Joseph signed Dylan's birth certificate believing that he was Dylan's father. On August 5, 2003, Joseph and Jamie were married. *Page 3 
 {¶ 3} Approximately eight months after Dylan's birth, Joseph was incarcerated for six months. Thereafter, Joseph was incarcerated for a second time for one year for a domestic violence conviction in which Jamie was the victim. On February 4, 2005, Jamie gave birth to Donald Fintel.
 {¶ 4} In July 2006, Jamie and Joseph separated and began living together sporadically. In August 2006, Joseph was arrested for domestic violence after he threw a shirt at Jamie, struck her in the face, and threw a phone at her. On December 13, 2006, Joseph was sentenced to a term of imprisonment for domestic violence and other charges stemming from the August 2006 altercation with Jamie. Joseph is currently incarcerated and scheduled for release on March 27, 2010.
 {¶ 5} At some point following the parties' separation, Jamie sought State benefits in Hardin County, which triggered court-ordered genetic testing of the children to establish paternity. As a result, it was determined that Joseph was not Dylan's biological father.
 {¶ 6} On April 19, 2007, SCDJFS filed a complaint alleging that Dylan was a dependent child pursuant to R.C. 2151.04(C) naming both Jamie and Joseph as parties. On April 23, 2007, a probable cause and shelter hearing was held. On June 11, 2007, the trial court issued ex parte orders placing temporary custody of Dylan with SCDJFS. On June 12, 2007, the magistrate held a probable cause and *Page 4 
review hearing wherein counsel for Jamie made an oral motion to dismiss Joseph as a party since he was not Dylan's biological father.
 {¶ 7} On June 15, 2007, the magistrate issued a decision dismissing Joseph as a party to the proceedings. Joseph subsequently filed objections to the magistrate's decision. The trial court heard evidence on the objections and, on July 11, 2007, entered its judgment adopting the magistrate's decision.
 {¶ 8} On August 8, 2007, Joseph filed an appeal to this Court, which was dismissed on November 9, 2007 for lack of a final appealable under Civ.R. 54(B). On December 4, 2007, the trial court entered its corrected journal entry based upon our order of dismissal. On December 7, 2007, Joseph filed this present appeal asserting two assignments of error for review.
 ASSIGNMENT OF ERROR NO. I THE TRIAL COURT ERRED IN DISMISSING APPELLANT AS A PARTY TO THE PROCEEDINGS BECAUSE HE STANDS IN LOCO PARENTIS.
 {¶ 9} In his first assignment of error, Joseph argues that the trial court erred in dismissing him as a party because he stands in loco parentis to Dylan. SCDJFS, on the other hand, contends that the appeal must be dismissed for lack of a final appealable order under R.C.2505.02(B). In the alternative, SCDJFS argues that the trial court did not abuse its discretion in dismissing Joseph as a party. Although we disagree with SCDJFS that the appeal must be dismissed pursuant to *Page 5 
R.C. 2505.02(B), we do agree that the trial court did not abuse its discretion in this case.
 {¶ 10} "An order that affects a substantial right made in a special proceeding" is a final appealable order. R.C. 2505.02(B)(2). `"Substantial right' means a right that the United States Constitution, the Ohio Constitution, a statute, the common law, or a rule of procedure entitles a person to enforce or protect." R.C. 2505.02(A)(1). SCDJFS argues that step-parents do not have parental rights recognized by any of the aforementioned sources. We disagree with this broad overgeneralization.
 {¶ 11} SCDJFS mischaracterizes Joseph's argument. Joseph is not relying on his `step-parent' status to be a party to the custody proceedings; rather, Joseph is relying upon his alleged status of loco parentis. The common law has recognized that those standing in loco parentis have a protectable interest in custody proceedings.[1] See e.g. In re Goff, 11th Dist. No. 2001-P-0144, 2003-Ohio-6768, ¶ 15, citing In re Schmidt (1986), 25 Ohio St.3d 331, 338, 496 N.E.2d 952
(Celebreeze, J., concurring); In re J.W., 10th Dist. Nos. 06AP-864, 06AP-1062, 06AP-875, 2007-Ohio-1419, ¶ 27; In re Titionna K., 6th Dist. No. L-06-1232, *Page 6 
2007-Ohio-1861, ¶ 4; In re C.M., 9th Dist. No. 21720, 2004-Ohio-1984, ¶¶ 21-22.
Accordingly, we will decide the case on its merits.[2]
 {¶ 12} Joseph argues that the term "parent" in Juv.R. 2(Y) should be interpreted to include those standing in loco parentis. We disagree. Juv.R. 2(Y) provides:
 "Party" means a child who is the subject of a juvenile court proceeding, the child's spouse, if any, the child's parent or parents, or if the parent of a child is a child, the parent of that parent, in appropriate cases, the child's custodian, guardian, or guardian ad litem, the state, and any other person specifically designated by the court.
(Emphasis added). Juv.R. 2(Y)'s plain language does not include the term "loco parentis". The rule provides for multiple "parties," including the child's custodian, guardian, or guardian ad litem, the state, and any other person designated by the court. Since the rule fails to include parties standing in loco parentis, we conclude that it was purposefully excluded. Expressio unis est exclusio alterius, the mention of one excludes the other. Accordingly, we find Joseph's argument lacks merit.
 {¶ 13} Joseph's first assignment of error is, therefore, overruled. *Page 7 
 ASSIGNMENT OF ERROR NO. II THE DECISION OF THE TRIAL COURT TO DISMISS APPELLANT AS A PARTY TO THE PROCEEDINGS WAS AN ABUSE OF DISCRETION.
 {¶ 14} In his second assignment of error, Joseph argues that the trial court abused its discretion when it removed him from the custody proceedings because the trial court "heard absolutely no evidence" and he has acted as Dylan's father since birth. SCDJFS argues that the trial court did not abuse its discretion because Joseph was not an active father figure since he was incarcerated for more than half of Dylan's life. We agree.
 {¶ 15} A trial court may remove parties upon "motion of any party or of its own initiative at any stage of the action and on such terms as are just." In re H.W., 114 Ohio St.3d 65, 868 N.E.2d 261,2007-Ohio-2879, ¶ 11, citing Civ.R. 21. This same standard applies for parties removed under Juv.R. 2(Y). Id. An appellate court reviews a lower court's removal of a party under an abuse of discretion standard. Id. at ¶ 14. "Abuse of discretion" is more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219, 450 N.E.2d 1140.
 {¶ 16} Joseph's argument that the trial court "heard absolutely no evidence" on whether he should be removed as a party is meritless. At the review hearing, Joseph's counsel informed the court that Joseph was not Dylan's biological father. *Page 8 
(June 12, 2007 Tr. at 3-4). Thereafter, Jamie's counsel moved the court to dismiss Joseph as a party. (Id. at 5). The magistrate found that it was appropriate to dismiss Joseph because: (1) he was not the biological father; (2) he was not involved in the case due to his incarceration; (3) he was not involved with Dylan due to his incarceration; and (4) he was not going to be involved with Dylan for some time due to his incarceration. (Id. at 7-9).
 {¶ 17} Following Joseph's objections to the magistrate's decision, the trial court held a hearing on the matter wherein it heard testimony from Joseph and Jamie. In its journal entry, the trial court made several findings of fact upon which it relied to dismiss Joseph. Specifically, the trial court found:
 18. Since the birth of Dylan, Mother and [Joseph] have had an "on again — off again" relationship. [Joseph] has been incarcerated in prison or in jail at various times and for various offenses for approximately 28 months since the birth of Dylan.
 19. Dylan is approximately 53 months old.
 20. Since the birth of Dylan, [Joseph] has been incarcerated for more than half of the life of Dylan.
 21. [Joseph] is currently incarcerated. He has been incarcerated since December 13, 2006.
 22. [Joseph] hopes that he will be granted Judicial release. If successful, [Joseph's] earliest release date would be: December 13, 2007.
 23. In the event that [Joseph] is not granted Judicial or other early release, he will have to serve a prison term to March 27, 2010.
 24. [Joseph] has multiple criminal convictions. Two of his convictions are for Domestic Violence upon Mother-once when she was pregnant with Dylan-the second time that occurred in the presence of Dylan.
 25. Dylan has been in the presence of [Joseph] when [he] has been arrested. This has happened on three different occasions *Page 9 (receiving stolen property in Lucas County, warrant for fines and costs from Hancock County, and recently in 2006 for the Felony Domestic Violence upon Mother).
 26. Hardin County Common Pleas, Juvenile Division, has already determined that [Joseph] is not the biological father of Dylan.
 27. [Joseph] has never been appointed by any court as the duly appointed Guardian of Dylan.
 28. [Joseph] has never been designated the custodian of Dylan by court order.
 29. No information was provided to the court that [Joseph] has been named as the Guardian ad litem for Dylan.
 30. [Joseph] has not adopted Dylan.
 31. [Joseph] asserts that since the birth of Dylan-up until two weeks ago when he learned about the results of the DNA paternity testing-he thought he was the biological father of Dylan. During this time, [Joseph] was actively involved in the life of Dylan, providing financial and in-kind support for Dylan, as well as being involved in his upbringing and care.
 * * *
 35. No legal authority was provided to the court that [Joseph] has any constitutional or other legal rights in this proceeding.
 36. The court finds that it is not in the best interests of Dylan that [Joseph] be a party to these proceedings.
 {¶ 18} The testimony of the parties at the July 10, 2007 hearing supports the trial court's findings of fact in this matter. Under these circumstances, we cannot find that the trial court abused its discretion in dismissing Joseph as a party.
 {¶ 19} Joseph's second assignment of error is, therefore, overruled.
 {¶ 20} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment Affirmed.
 SHAW, P.J., and WILLAMOWSKI, J., concur.
[1] Generally, these cases involve grandparents that have stood in loco parentis and have moved to intervene in the custody determination. Nonetheless, these cases hinge upon the grandparent's status of loco parentis and are, therefore, analogous.
[2] Furthermore, in our November 9, 2007 journal entry dismissing Joseph's first appeal we stated: "* * * the court finds that the order dismissing appellant as a party constitutes a "final order," as the judgment affects a substantial right* * *." *Page 1