[Cite as *Kryder v. Kryder*, 2012-Ohio-2280.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

| | | |
|---|---|---|
| PATRICIA PORTER KRYDER | | C.A. No. 25665 |
| Appellant | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| GEORGE MONROE KRYDER, III, et al. | | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellees | | CASE No. 2008-CV-92 |

DECISION AND JOURNAL ENTRY

Dated: May 23, 2012

---

BELFANCE, Presiding Judge.

**{¶1}** Appellant, Patricia Porter Kryder, appeals from a judgment of the Summit County Court of Common Pleas, Probate Division, that granted summary judgment to her brothers, George Monroe Kryder, III and Robert Stanley Kryder, on Patricia's claims against them to invalidate their late mother's will and trust and to reform or modify the terms of each of their late parent's trusts. For the reasons that follow, this Court affirms.

I.

**{¶2}** Although the parties dispute many facts pertaining to the nature of their personal and financial relationships with their parents, their grandmother, and each other during the final decades of their parents' and grandmother's lives, those factual disputes are not relevant to the disposition of this appeal. The following facts are not disputed. Appellant, Patricia Porter Kryder, and Appellees, George Monroe Kryder, III and Robert Stanley Kryder (known as "Stanley"), are the children of Patricia P. Kryder (known as "Tish") and George M. Kryder, Jr,

both of whom are deceased. Patricia and her brothers were raised by their parents in Ohio, but each later relocated out of state while their parents continued to reside in the Akron area.

{¶3} During the 1980s and 1990s, Patricia maintained a close relationship with their grandmother, Alice.[1] In 1985, Alice executed a new will that modified the distribution of her assets and named Patricia as the sole fiduciary of her estate. In 1987, Alice executed a codicil to her will. In 1990, Alice moved from Florida to a nursing home near Patricia's home in Tennessee. After Alice died in April 1995, Patricia, George III, and Stanley all came to Akron for a family memorial service. Before Patricia left Akron, she gave a copy of Alice's will to her brothers, who later reviewed the will with their parents, George, Jr. and Tish.

{¶4} Four days after the memorial service, on May 3, 1995, George Jr. and Tish met with their attorney and long-time friend, Oscar Hunsicker, Jr., to discuss updating their existing wills and trusts. At that time, George, Jr. and Tish had an estate plan that included most of their assets being held in revocable trusts that became irrevocable upon each of their deaths and which designated all three of their children as beneficiaries. During their meeting with Mr. Hunsicker, Mr. Hunsicker reviewed and explained the provisions of Alice's will to them. The Kryders discussed several changes that they desired to make to their wills and trusts, which included excluding Patricia and her children as beneficiaries. Consequently, Mr. Hunsicker's firm drafted new wills and trusts for George, Jr. and Tish, which expressly stated their intention to remove Patricia and her children as beneficiaries. Mr. Hunsicker delivered the new wills and trusts to George and Tish five days prior to their execution. On May 15, 1995, Mr. Hunsicker met with George Jr. and Tish at his office and reviewed the new documents with his clients and ascertained that they understood and agreed to all of the terms. Mr. Hunsicker also asked both

---

[1] Because Alice's correct surname is disputed by the parties, it has been omitted.

George, Jr. and Tish whether their execution of the new will was their free act and deed to which they affirmatively responded. Both George Jr. and Tish executed their new wills and trusts, which were witnessed by several persons at the law firm. Neither George III nor Stanley had any communication with Mr. Hunsicker concerning the parents' estate planning and neither was present at any of the meetings with Mr. Hunsicker.

{¶5} George, Jr. died on December 8, 2004. On March 25, 2005, Tish executed a codicil to her 1995 will that modified only the "fiduciary" provision to remove George, Jr. as the executor of the will and replace him with George III and Stanley and to change one of the local attorneys who was named to serve as local co-executor.

{¶6} Tish died on October 3, 2007. On April 15, 2008, Stanley, as an executor of his mother's estate, admitted her 1995 will and 2005 codicil to probate. On July 23, 2008, Patricia filed a complaint against her brothers to contest the validity of Tish's will and trust, claiming that she was removed as a beneficiary due to undue influence by her brothers. Patricia also sought to reform or modify each of her parent's trusts, claiming that they had been executed based on a mistake of fact and/or unanticipated consequences. She further stated claims for intentional interference with her expectancy of an inheritance, which she later voluntarily dismissed without prejudice.

{¶7} Patricia's remaining claims against her brothers were all based on allegations that George III and Stanley misrepresented the terms of their grandmother Alice's will when they reviewed it with Tish and George, Jr. in 1995. Specifically, she alleged that George III and Stanley falsely told their parents that Alice's will had left a disproportionate share of her estate to Patricia and her daughters, at the expense of George Jr., Tish, and the rest of the family, and that they disinherited her solely for that reason.

{¶8}     Through three separate motions, George III and Stanley moved for summary judgment on the remaining four claims, asserting that Patricia's claim for modification or reformation of her father's trust was barred by the statute of limitations, that she lacked standing to assert her claims for reformation of either trust, and that she could not demonstrate a triable issue of fact on her claims of undue influence.  The trial court ultimately found that Patricia lacked standing to assert her claims for modification or reformation of her parents' trusts and that she had failed to demonstrate a genuine issue of material fact on her claims of undue influence.  Consequently, it granted summary judgment to George III and Stanley on Patricia's remaining claims.  Patricia appeals and raises two assignments of error.

## II.

### ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO DEFENDANTS-APPELLEES ON COUNTS V AND VI OF PLAINTIFF-APPELLANT'S COMPLAINT ON GROUNDS THAT PLAINTIFF-APPELLANT LACKS STANDING.

{¶9}     Patricia's first assignment of error is that the trial court erred in granting summary judgment to her brothers on Counts V and VI of her complaint.    In these counts of her complaint, Patricia sought to modify or reform her parents' trusts due to mistake of fact and/or unanticipated circumstances pursuant to R.C. 5804.12 and/or 5804.15.  R.C. 5804.12 provides, in relevant part:

(A) The court may modify the administrative or dispositive terms of a trust or terminate the trust if because of circumstances not anticipated by the settlor modification or termination will further the purposes of the trust.  To the extent practicable, the court shall make the modification in accordance with the settlor's probable intention.

(B) The court may modify the administrative terms of a trust if continuation of the trust on its existing terms would be impracticable or impair the trust's administration.

**{¶10}** In addition, R.C. 5804.15 provides:

> The court may reform the terms of a trust, even if they are unambiguous, to conform the terms to the settlor's intention if it is proved by clear and convincing evidence that both the settlor's intent and the terms of the trust were affected by a mistake of fact or law, whether in expression or inducement.

**{¶11}** R.C. 5804.10(B) details who may bring an action under R.C. 5804.12 and 5804.15. It provides, in relevant part:

> A trustee or beneficiary may commence a proceeding to approve or disapprove a proposed modification or termination under sections 5804.11 to 5804.16 of the Revised Code[.]

**{¶12}** The trial court, relying upon R.C. 5804.10(B), determined that Patricia could not seek modification of the trust under R.C. 5804.12 or reformation of the trust under R.C. 5804.15 because she was not a trustee or beneficiary under the trusts.

### Procedural argument

**{¶13}** Relying on Civ.R. 8(C), Patricia has argued that the brothers "did not assert the affirmative defense of lack of standing" in their answer and, because it was first raised in filing their summary judgment motion, they waived the issue of standing. We disagree.

**{¶14}** The concept of standing has multiple connotations depending upon the context in which it is raised. *See, e.g., Fed. Home Loan Mtge. Corp v. Schwartzwald*, 194 Ohio App.3d 644, 2011-Ohio-2681, ¶ 57 (2nd Dist.). Civ. R. 8(C) provides:

> In pleading to a preceding pleading, a party shall set forth affirmatively accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, want of consideration for a negotiable instrument, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, waiver, and any other matter constituting an avoidance or affirmative defense. When a party has mistakenly designated a defense as a counterclaim or a counterclaim as a defense, the court, if justice so requires, shall treat the pleading as if there had been a proper designation.

{¶15} Civ.R. 8(C) does not specifically identify standing as an affirmative defense. However, the rule does require a party in "pleading to a preceding pleading [to] set forth * * * any other matter constituting an avoidance or affirmative defense."

{¶16} The purpose of the pleading rules is to provide opposing parties with notice of the claims and defenses against them so they have a fair opportunity to respond. Pursuant to Civ.R. 8(A), a party is required to plead claims with sufficient particularity to put the defendants on adequate notice of the nature of the claims. Assuming the defendants were required to raise lack of standing under R.C. 5804.10(B), they had not been given notice by Patricia's complaint of any need to do so. It was not apparent from Patricia's complaint that the claims she set forth in Counts V and VI were based on R.C. 5804.12 or 5804.15. These claims were based on allegations that Patricia's brothers had misrepresented the terms of Alice's will to their parents. Based on those alleged misrepresentations, Counts V and VI alleged that her parent's trusts were "not an accurate expression" of their wishes "due to a mistake of fact and/or unanticipated circumstances" and that each trust should be reformed to include Patricia as a beneficiary. Although Patricia's complaint did include some of the language found in R.C. 5804.12 and 5804.15, she did not cite or allude to specific sections of the Ohio Revised Code. Thus, a reasonable interpretation of her allegations was that she was challenging the validity of the trusts based upon the alleged misrepresentations of her brothers.

{¶17} It is apparent from the arguments raised by George III and Stanley in their initial summary judgment motion that they assumed that Patricia was seeking to invalidate or reform the trusts under R.C. 5804.06, which allows a trust to be voided due to fraud, duress, or undue influence. It was not until Patricia filed her brief in response to the motion for summary judgment that she put the defendants and the trial court on notice that that she was not basing

Counts V and VI on R.C. 5804.06, but was basing her trust reformation and modification claims on R.C. 5804.12 and 5804.15. In their reply brief, George III and Stanley argued to the trial court that Patricia could not proceed under those statutory provisions because she was not a named beneficiary of either trust.

{¶18} Because George III and Stanley had no prior notice of a need to respond to claims under R.C. 5804.12 or 5804.15, Patricia has failed to demonstrate that they failed to timely raise this defense. Moreover, pleadings are to be construed "as to do substantial justice[,]" and the trial court had the discretion to allow the defendants to assert additional defenses not raised in their initial answer. Civ.R. 8(F); Civ.R.15(A). Notably, Patricia has not provided any legal authority that the trial court could not consider the applicability of R.C. 5804.10(B) under the circumstances of this case. Although Patricia cited *LeMarin Condominium Unit Owners Assn, Inc. v. Bd. of Revision of Ottawa Cty.*, 176 Ohio App.3d 342, 2008-Ohio-2379, ¶ 8-10 (6th Dist.), we find it inapplicable, given that the issue in that case involved a question of whether a condominium association that held legal title could file a complaint challenging a tax valuation.

## Substantive Argument

{¶19} Patricia argues that the trial court's decision was substantively incorrect because it misconstrued the language of R.C. 5804.10(B) when it found that Patricia could not seek modification or reformation of the trusts because she was not a beneficiary or a trustee under the trusts.

{¶20} Patricia challenges the trial court's statutory interpretation, asserting that, because R.C. 5804.10(B) does not explicitly provide that "only" a trustee or beneficiary may bring these claims, nor does it expressly provide that other persons do "not" have the authority, it was not intended to limit standing to file claims under R.C. 5804.12 or 5804.15 to trustees and

beneficiaries of the trust. Patricia cites no authority to support her statutory interpretation, however.

**{¶21}** As the trial court reasoned in its decision, these provisions of the Ohio Revised Code were modeled after the Uniform Trust Code, which includes similar language to provide that proceedings to modify or terminate trusts "may be commenced" by a trustee or beneficiary. Section 410, Uniform Trust Code. The Comments following Section 410 of the Uniform Trust Code explain that this language "specifies the persons who have standing to seek court approval or disapproval of proposed trust modifications, terminations, combinations, or divisions."

**{¶22}** Moreover, this language must be construed according to the rules of grammar and common usage. R.C. 1.42. Another rule of statutory construction is the maxim, expressio unis est exclusio alterius, which means "'the expression of one thing is the exclusion of the other.'" *Thomas v. Freeman*, 79 Ohio St.3d 221, 224 (1997), quoting *Black's Law Dictionary* 581 (6th Ed.1990). In other words, by explicitly identifying a "trustee" and a "beneficiary" as those who "may" bring causes of action under R.C. 5804.12 and 5804.15, R.C. 5804.10 was intended to exclude all other persons from having authority to pursue those statutory claims. *See In re Fintel*, 3rd Dist. No. 13-07-33, 2008-Ohio-734, ¶ 12.

**{¶23}** Ohio courts have commonly interpreted similar statutory language about who "may" file a statutory proceeding as a limitation on who has authority or standing to commence those proceedings. *E.g.*, *See, e.g.*, *In re Estate of Sacco*, 7th Dist. No. 03 CO 39, 2004-Ohio-3196, ¶ 4-6 (construing R.C. 2115.16, which provides that exceptions to the inventory of a decedent's estate "may be filed" by "any person interested in the estate or in any property included in the inventory," as defining those who have standing to file statutory exceptions); *Perry Twp. Bd. of Trustees v. Franklin Cty. Bd. of Zoning Appeals*, 10 Ohio App.3d 103, 104

(10th Dist.1983) (similarly construing R.C. 303.15, which provides that appeals to a county board of zoning appeals "may be taken" by persons aggrieved by the administrative decision or by an officer of the county affected by the decision, as limiting standing to appeal to those within the two enumerated categories).

{¶24} The facts are undisputed in this case that Patricia is not a trustee or beneficiary of either of her parent's trusts. Consequently, based on the plain language of R.C. 5804.10, the trial court correctly concluded, as a matter of law, that Patricia lacked standing to pursue claims for modification or reformation of her parents' trusts under R.C. 5804.12 or 5804.15.

{¶25} Because the trial court correctly determined that Patricia lacked standing to pursue the claims she stated in Counts V and VI of her complaint, it did not err in granting summary judgment to George III and Stanley on those claims. Patricia's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO DEFENDANTS-APPELLEES ON PLAINTIFF-APPELLANT'S UNDUE INFLUENCE CLAIMS (COUNTS I AND II) ON GROUNDS THAT NO GENUINE ISSUES OF MATERIAL FACT EXIST FOR TRIAL.

{¶26} Patricia's second assignment of error is that the trial court erred in granting summary judgment to George III and Stanley on Counts I and II of her complaint, which sought to invalidate her mother's will and trust, which explicitly excluded her and her daughters as beneficiaries. Specifically, the trial court found that Patricia had failed to raise a genuine issue of material fact that Tish's decision to exclude Patricia and her daughters as beneficiaries had been the result of undue influence by her brothers, George III and Stanley.

{¶27} "This Court reviews an award of summary judgment de novo." *Grafton v. Ohio Edison Co.,* 77 Ohio St.3d 102, 105 (1996). Pursuant to Civ.R. 56(C), summary judgment is proper if:

> No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.,* 50 Ohio St.2d 317, 327 (1977).

{¶28} The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and pointing to parts of the record that show the absence of a genuine issue of material fact. *Dresher v. Burt,* 75 Ohio St.3d 280, 292–293 (1996). The moving party must support the motion by pointing to some evidence in the record of the type listed in Civ.R. 56(C). *Id.* Once this burden is satisfied, the non-moving party bears the burden of offering specific facts to show a genuine issue for trial. *Id.* at 293. The non-moving party may not rest upon the mere allegations and denials in the pleadings but instead must point to or submit some evidentiary material that demonstrates a genuine dispute over a material fact. *In re Fike Trust*, 9th Dist. No. 06CA0018, 2006-Ohio-6332, ¶ 10.

{¶29} As Tish's will and trust had been admitted to probate, they were presumed to be valid. "'A presumption arises from the order of admission of the will to probate that the testator was free from restraint. The burden of proving undue influence is upon the contestants * * *.'" *Krischbaum v. Dillon*, 58 Ohio St.3d 58, 64 (1991), quoting *West v. Henry*, 173 Ohio St. 498, 502 (1962) (construing former R.C. 2741.45, substantively similar language currently set forth in R.C. 2107.74).

{¶30}   The Ohio Supreme Court has stated that "undue influence to avoid a will, must so overpower and subjugate the mind of the testator as to destroy his free agency and make him express the will of another rather than his own, and the mere presence of influence is not sufficient. Undue influence must be present or operative at the time of the execution of the will resulting in dispositions which the testator would not otherwise have made." *West* at 501.  The essential elements of undue influence are: (1) a susceptible testator, (2) another's opportunity to exert influence on the testator, (3) the fact of improper influence exerted or attempted, and (4) a result showing the effect of such influence.  *West* at 510-511.  *See also* R.C. 5804.06 ("A trust is void to the extent its creation was induced by * * * undue influence * * * [which has] the same meaning[] for trust validity purposes as [it has] for purposes of determining the validity of a will.").  In the context of summary judgment, the failure to meet one's burden as to any one of the essential elements can be dispositive.  *See, e.g., Cefaratti v. Cefaratti*, 11th Dist. No. 2004-L-091, 2005-Ohio-6895, ¶ 24-27 (finding no cause of action for undue influence where susceptibility element was not met).

{¶31}   Beginning with the first element, a susceptible testator, the trial court determined that there was no evidence that Tish was susceptible to undue influence at the time she executed her will and trust.  Although Patricia correctly argues that her claims of undue influence did not require her to prove that her mother lacked testamentary capacity, she was required to demonstrate the existence of a material dispute of fact that there was a limitation on her mother's ability to exercise her own wishes regarding the disposition of her property.  In other words, the fact that Tish disposed of her property in an unequal or unfair manner, even if she did so under the express influence of George III and Stanley, could not establish the claims of undue influence unless Patricia first established that, at the time she executed the will and trust documents, there

was a dispute of fact as to whether Tish lacked the ability to control her "mental operations" so as to overcome the influence of her sons and "act freely according to [her] own wishes and pleasure." *West*, 173 Ohio St. at 501, quoting 57 American Jurisprudence, Wills, Sections 350 and 351, at 258-259.

{¶32}  To support their argument that they were entitled to summary judgment as to the susceptibility element, George III and Stanley pointed to the 2008 deposition testimony of Mr. Hunsicker, who had reviewed the terms of the 1995 will and trust with Tish and testified that he had ascertained that she had testamentary capacity and that she had responded affirmatively when he asked her whether she was exercising her own free will at the time she executed each document that removed Patricia and her daughters as beneficiaries.  Because Mr. Hunsicker was a long-time friend of the Kryders, he had continual interaction with Tish for the remainder of her life.  After 2001, Tish lived in the same apartment building as Mr. Hunsicker, where he saw her periodically up until shortly before her death.  According to his observations, Tish remained active and would exercise by walking and climbing the stairs between floors in the building.  He further observed that Tish was involved in and aware of her day-to-day affairs, had "her wits about her[,]" and remained lucid up until the last time he saw her, which was approximately one month before her death.

{¶33}  George III and Stanley also pointed to Patricia's own deposition testimony that described her mother as a "strong, independent person" and explained that "she ran the show" in their family throughout her lifetime.  Patricia further explained that family members, including her brothers, "did not disagree with her, because whatever her position was, was her position. * * * [T]here would be no way to discuss a different point of view.  With politics, she had her view and that was her view."  Patricia also testified that Tish was the one who always controlled her

parents' finances: "She wrote the checks, she balanced the checkbook. My dad made money on his job, and my mother handled all the books."

**{¶34}** The evidence presented by George III and Stanley satisfied their initial burden on summary judgment to point to evidence that Patricia lacked evidence that their mother was a susceptible testator. *Hamilton v. Hector*, 117 Ohio App.3d 816, (3rd Dist.1997) (summary judgment appropriate where evidence was not disputed that, although physically infirm, testator was an alert, feisty, older woman with a mind and will of her own). *Accord Dalton v. Abbott*, 10th Dist. No. 89AP-1310, 1990 WL 29239 (Mar. 20, 1990) *2 (holding that even though testator was in failing health with mental and emotional problems, evidence that she was an intelligent and strong-willed person who managed her own affairs supported a directed verdict for the defendants).

**{¶35}** After George III and Stanley satisfied their initial burden on summary judgment, the burden shifted to Patricia to point to specific facts to show a genuine issue for trial. *Dresher,* 75 Ohio St.3d at 293. In response to her brothers' argument on this element of her undue influence claims, however, Patricia failed to point to any evidence that their mother was susceptible to undue influence. She did not dispute any of the evidence presented by her brothers that their mother was strong-willed, mentally and physically stable, and in control of her own affairs at the time she executed her will and trust in 1995 and up until her death in 2007.

**{¶36}** Patricia's only opposition to her brothers' argument on the susceptibility element was an isolated statement of law that susceptibility "must be examined in light of the type of influence employed." *Redman v. Watch Tower Bible and Tract Society of Pennsylvania*, 6th Dist. No. 91WD071, 1992 WL 193533, *2 (Aug. 14, 1992). Although *Redman* included such a legal statement, it proceeded to examine evidence of the testator's susceptibility, emphasizing

14

that "[a] more susceptible testator may be more easily influenced [while a] stronger willed individual may be able to assert his own desires even in the face of extraordinary pressures." *Id.* The court then focused on the evidence in that case that the testator was susceptible to undue influence because he was mildly retarded and had personality disorders that could be exploited by others. *Id.*

{¶37} Viewing the evidence in a light most favorable to Patricia, the record demonstrates that Patricia failed to meet her burden on summary judgment because she failed to point to any evidence to contradict the evidence presented by her brothers or to even suggest that their mother was susceptible to undue influence by her brothers in 1995 or was otherwise unable to exercise her own free judgment about how to dispose of her property when she executed her will and trust. Because Patricia failed to demonstrate a triable issue on the first of four elements of undue influence, the trial court did not err in granting summary judgment to George III and Stanley on those claims. Patricia's second assignment of error is overruled.

## III.

{¶38} Patricia's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Probate Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

 

 

EVE V. BELFANCE
FOR THE COURT

WHITMORE, J.
MOORE, J.
CONCUR.

APPEARANCES:

DAVID L. DRECHSLER and MICHAEL J. MATASICH, Attorneys at Law, for Appellant.

SALLIE C. LUX and NICHOLAS P. CAPOTOSTO, Attorneys at Law, for Appellees.