[Cite as *Vaccaro v. Borgione*, 2022-Ohio-3473.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

KEITH VACCARO, et al.

    Appellants

    v.

GEORGE A. BORGIONE, et al.

    Appellees

C.A. No.    21CA011723

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.    18CV196923

DECISION AND JOURNAL ENTRY

Dated: September 30, 2022

TEODOSIO, Judge.

{¶1} Plaintiff-Appellants, Keith Vaccaro and Peggy Nichols, appeal from the judgment of the Lorain County Court of Common Pleas in favor of Defendant-Appellees, George and Carol Borgione (collectively, "the Borgiones"). This Court affirms.

I.

{¶2} In 1977, Mr. Borgione's father ("Borgione Senior") purchased a nine-acre parcel of property off West River Road in Columbia Station. The northernmost portion of the property included a house ("the Borgione house"), and the southeastern portion of the property included two buildings. Both the Borgione house and the two buildings were accessible via an asphalt driveway that began on West River Road. The driveway ran along the southside of the Borgione house, extended in a slight southeasterly direction, and ended at the two buildings.

{¶3} Mr. Borgione began renting the Borgione house from Borgione Senior in 1979 and used the two buildings on the property for his construction business. Three years later, he and his

father built another house just to the south of the Borgione house's driveway. The second house had its own driveway off West River Road. When construction on the second house was complete, Borgione Senior moved into the house and lived there until 2005. It was understood by both Mr. Borgione and Borgione Senior that the Borgione house's driveway served as the dividing line between their two properties. They formalized that agreement in 2000 when Mr. Borgione and his wife, Carol, purchased land from Borgione Senior.[1] That purchase included the Borgione house, its driveway, and a sizeable portion of the surrounding acreage to the southeast, including the two buildings. Hereinafter, the land and property the Borgiones purchased from Borgione Senior will be referred to as "the Borgione Property."

{¶4} When Borgione Senior sold the Borgione Property to his son and daughter-in-law, he also split his remaining acreage into three equal parcels. In 2005, he sold his house, i.e., the house to the south of the Borgione Property, and the parcel of land on which it was located to Ms. Nichols. She and Mr. Vaccaro began residing there that same year, and Mr. Vaccaro's name was later added to the deed. For the sake of simplicity, this Court will refer to the land and property Borgione Senior sold to Ms. Nichols as "the Vaccaro-Nichols Property." With the purchase of the Vaccaro-Nichols Property, Ms. Nichols and Mr. Vaccaro became the Borgiones' next-door neighbors.

{¶5} It is undisputed that the Borgiones have used the Borgione Property's driveway since the 1980s. In 2010, Mr. Borgione had the entire driveway, including its apron, repaved in concrete. As soon as the concrete driveway was poured, it became obvious to Ms. Nichols and Mr. Vaccaro that a portion of the driveway's apron was encroaching on their property. They

---

[1] It is not clear from the record when the Borgiones married, but Carol Borgione began living with Mr. Borgione in the Borgione house in 1984.

immediately discussed having a boundary survey performed but did not hire a surveyor until 2018. When their boundary survey was finally performed, it confirmed that a roughly triangular portion of the Borgione Property's driveway apron encroached on their property.

{¶6} Mr. Vaccaro and Ms. Nichols filed suit against the Borgiones in December 2018. They asked the trial court to determine the boundary line between their respective properties and to quiet title in accordance with the results of their boundary survey. They also asked the court to award them damages, costs, and attorney fees and to enjoin the Borgiones from interfering with their property.

{¶7} After the Borgiones filed their answer, the matter proceeded to a bench trial. The trial court heard the evidence and gave each party the opportunity to file post-trial briefs. Based on the evidence presented at trial and the post-trial briefs that each party submitted, the trial court entered judgment in favor of the Borgiones. The trial court determined that an implied easement by prior use existed in favor of the Borgiones and, in any event, that Mr. Vaccaro and Ms. Nichols' claims were barred by the doctrine of laches.

{¶8} Mr. Vaccaro and Ms. Nichols now appeal from the trial court's judgment and raise three assignments of error for our review. For ease of analysis, we rearrange two of their assignments of error.

II.

**<u>ASSIGNMENT OF ERROR I</u>**

THE LORAIN COUNTY, OHIO, COURT OF COMMON PLEAS ERRED WHEN IT ALLOWED THE APPELLEE'S (sic) TO USE AN AFFIRMATIVE DEFENSE THEY DID NOT USE IN THEIR RESPONSIVE PLEADINGS.

{¶9} In their first assignment of error, Mr. Vaccaro and Ms. Nichols argue that the trial court abused its discretion when it allowed the Borgiones to rely on affirmative defenses that they

failed to include in their responsive pleading. Specifically, Mr. Vaccaro and Ms. Nichols argue that the Borgiones waived the affirmative defenses of implied easement by prior use and implied easement by necessity because they did not include those defenses in their answer. For the following reasons, this Court rejects their argument.

{¶10} An implied easement is an affirmative defense. *See Campbell v. Great Miami Aerie No. 2309, Fraternal Order of Eagles*, 15 Ohio St.3d 79, 83 (1984). In general, an affirmative defense is forfeited if it is not affirmatively set forth in the pleadings or authorized through an amendment to the pleadings. *Brunswick Hills Twp. V. G&K Constr., Inc.*, 9th Dist. Medina No. 14CA0017-M, 2016-Ohio-57, ¶ 6, citing Civ.R. 8(C). "Civ.R. 15(A) allows for amendment of pleadings by leave of court or by written consent of the other party * * *." *Radio Parts Co. v. Invacare Corp.*, 9th Dist. Lorain No. 07CA009192, 2008-Ohio-4777, ¶ 10. "'[T]he language of Civ.R. 15(A) favors a liberal amendment policy * * *." *Gustinski v. Pleasant View Health Care Ctr.*, 9th Dist. Summit No. 29880, 2022-Ohio-1928, ¶ 8, quoting *Hoover v. Sumlin*, 12 Ohio St.3d 1, 5 (1984). That is because the Civil Rules "were intended to promote the resolution of cases on their merits rather than on pleading deficiencies." *Radio Parts Co.* at ¶ 10.

{¶11} "[A] party's initial failure to plead a defense 'should prevent its later assertion only if that will seriously prejudice the opposing party.'" *Id.* at ¶ 10, quoting *Hoover* at 5. For example, "[a] party may be prejudiced when an opposing party seeks to assert defenses at a time when the party could not adequately prepare to litigate them." *Natl. City Mtge. v. Skipper*, 9th Dist. Summit No. 24772, 2009-Ohio-5940, ¶ 7. The overarching purpose of the pleading rules "is to provide opposing parties with notice of the claims and defenses against them so they have a fair opportunity to respond." *Kryder v. Kryder*, 9th Dist. Summit No. 25665, 2012-Ohio-2280, ¶ 16. This Court reviews a trial court's decision to allow an amendment to the pleadings for an abuse of discretion.

*Skipper* at ¶ 5. An abuse of discretion indicates that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶12} When the Borgiones filed their answer, they included waiver, adverse possession, and "Mutual Acquiescence in Boundary" as affirmative defenses. They did not specifically include the affirmative defenses of implied easement by prior use or implied easement by necessity. At trial, however, Mr. Vaccaro and Ms. Nichols' attorney informed the court that he had spoken with opposing counsel before trial and anticipated that the Borgiones would be arguing that they had an implied easement, which was "strictly necessary or reasonably necessary for the enjoyment of the land." There was no objection to the Borgiones raising implied easement by necessity or prior use at trial. Instead, the attorneys and the court had extensive discussions about implied easements, and the Borgiones confirmed that they would be arguing implied easement by necessity or prior use.

{¶13} During the trial, both attorneys asked questions aimed at proving or disproving the existence of an implied easement. The trial concluded with the attorneys agreeing that the case hinged upon those affirmative defenses and asking the court to accept post-trial briefs regarding their application. The attorney for Mr. Vaccaro and Ms. Nichols specifically requested that the Borgiones file their post-trial brief first, as the Borgiones carried the burden on their affirmative defenses and Mr. Vaccaro and Ms. Nichols wished to respond to their arguments. The trial court assented to that arrangement and accepted post-trial briefs from both parties. In their post-trial brief, Mr. Vaccaro and Ms. Nichols argued that the Borgiones had waived the affirmative defenses of implied easement by necessity and prior use by not including those defenses in their answer or seeking leave to amend their answer. Alternatively, they argued that the Borgiones had failed to establish their affirmative defenses on their merits.

{¶14} In ruling in favor of the Borgiones, the trial court deemed their answer amended to include the affirmative defense of implied easement by prior use. The trial court noted that the parties had acknowledged the affirmative defense was an issue during their pretrial discussions. Additionally, the court noted that the parties had elicited testimony and offered argument regarding that affirmative defense at trial. The trial court ultimately entered judgment in favor of the Borgiones because it found that they enjoyed an implied easement by prior use.

{¶15} Mr. Vaccaro and Ms. Nichols argue that the trial court erred when it allowed the Borgiones to proceed upon the affirmative defenses of implied easement by necessity and implied easement prior use because the Borgiones waived those defenses by not pleading them or amending their pleading. Before turning to the merits of their argument, this Court notes that the trial court only entered judgment in favor of the Borgiones based on the affirmative defense of implied easement by prior use or, in the alternative, the doctrine of laches. The trial court did not deem the pleadings amended to include the affirmative defense of implied easement by necessity and did not consider that affirmative defense in reaching its decision. Because the trial court limited its decision to the affirmative defense of implied easement by prior use, we likewise limit our review to that defense.

{¶16} The record reflects that Mr. Vaccaro and Ms. Nichols knew the Borgiones intended to raise the affirmative defense of implied easement by prior use at trial. It also reflects that both parties actively litigated that defense at trial, presented the court with arguments regarding that defense, and addressed the application of that defense in post-trial briefs. Mr. Vaccaro and Ms. Nichols have not addressed the trial court's decision to allow the Borgiones to amend their responsive pleading. Nor have they explained how they were seriously prejudiced by the court's ruling when the record reflects that they were afforded both notice and an opportunity

to respond to the Borgiones' argument. *See Radio Parts Co.*, 2008-Ohio-4777, at ¶ 10, quoting *Hoover*, 12 Ohio St.3d at 5. This Court will not formulate an argument on their behalf. *See* App.R. 16(A)(7); *Cardone v. Cardone*, 9th Dist. Summit No. 18349, 1998 WL 224934, *8 (May 6, 1998). Under these facts and circumstances, we cannot conclude that the trial court went so far as to abuse its discretion when it allowed the Borgiones to proceed on the affirmative defense of implied easement by prior use. *See Radio Parts Co.* at ¶ 9-15. Thus, Mr. Vaccaro and Ms. Nichols' first assignment of error is overruled.

## ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED WHEN IT GRANTED THE APPELLEE'S (sic) AN EASEMENT BY PRIOR USE.

{¶17} In their third assignment of error, Mr. Vaccaro and Ms. Nichols argue that the trial court erred when it determined that the Borgiones had an implied easement by prior use. Specifically, they argue that the Borgiones failed to prove the elements of that affirmative defense. We disagree.

{¶18} Mr. Vaccaro and Ms. Nichols have referenced both the abuse of discretion and manifest weight standards in setting forth their third assignment of error. Yet, the substance of their argument sounds in sufficiency. *See Vance v. Rusu*, 9th Dist. Summit No. 20841, 2002-Ohio-2096, ¶ 9. Sufficiency tests the adequacy of the evidence presented at trial and asks whether the party with the burden of proof "has met his or her burden of production by proving each element by a preponderance of the evidence." *Lynch v. Greenwald*, 9th Dist. Summit No. 26083, 2012-Ohio-2479, ¶ 20. The question is whether, after viewing the evidence in a light most favorable to that party, a reasonable trier of fact could have found in his or her favor. *Lubanovich v. McGlocklin*, 9th Dist. Medina No. 12CA0090-M, 2014-Ohio-2459, ¶ 8. In employing the foregoing standard, "'[f]indings of fact made by the trial court will not be overturned * * * if

supported by some competent, credible evidence.'" *Heiney v. Godwin*, 9th Dist. Summit No. 22552, 2005-Ohio-5659, ¶ 16, quoting *Maloney v. Patterson*, 63 Ohio App.3d 405, 409 (9th Dist.1989).

{¶19} "The party seeking to establish the existence of [an] easement bears the burden of demonstrating each of the required elements." *Heiney* at ¶ 19. "[A]n easement may be created by specific grant, prescription, or implication which may arise from the particular set of facts and circumstances." *Campbell*, 15 Ohio St.3d at 80. "An implied easement of use arises from the severance of property and transfer of land that at one time had a common owner, with the use in question in existence prior to severance." *Sargeant v. Sampson*, 9th Dist. Summit No. 18947, 1999 WL 195019, *3 (Mar. 31, 1999). The party seeking to establish an implied easement by prior use must prove:

> (1) A severance of the unity of ownership in an estate; (2) that, before the separation takes place, the use which gives rise to the easement shall have been so long continued and obvious or manifest as to show that it was meant to be permanent; (3) that the easement shall be reasonably necessary to the beneficial enjoyment of the land granted or retained; [and] (4) that the servitude shall be continuous as distinguished from a temporary or occasional use only.

*Ciski v. Wentworth*, 122 Ohio St. 487 (1930), syllabus. Regarding the third element of reasonable necessity, this Court has recognized that "[a]bsolute necessity is not required." *Iacomini v. Cogdeill*, 9th Dist. Summit No. 15761, 1993 WL 27389, *1 (Feb. 3, 1993). Unlike an implied easement by necessity, an implied easement by prior use "requires only a showing that the easement is 'reasonably necessary' and has 'materially added to the value' of the [dominant] estate." *Hinton v. Coyne*, 9th Dist. Summit No. 10883, 1983 WL 4057, *3 (Apr. 20, 1983), quoting *Baker v. Rice*, 56 Ohio St. 463, 478 (1897).

{¶20} Mr. Borgione testified that Borgione Senior originally owned the Borgione Property and the Vaccaro-Nichols Property because he purchased both properties in 1977. At that

time, the two estates were part of an undivided nine-acre parcel. The estates were formally divided in 2000 when Borgione Senior sold the Borgione Property to the Borgiones and split his remaining acreage into three equal parcels. Mr. Borgione testified that his father had his property surveyed beforehand because, apart from the Borgione Property, he wanted to create three equal lots of a specific acreage to sell in the future.

{¶21} Mr. Borgione testified that he began living on what would later become the Borgione Property in 1979. From that point forward, he, and later his wife, routinely used the driveway located on the property. Mr. Borgione testified that, even before his father sold him the Borgione Property, the two had a mutual understanding that the dividing line between what would eventually become the Borgione Property and the Vaccaro-Nichols Property was the southern edge of the driveway located on the Borgione Property. The Borgiones continued to use the driveway after Borgione Senior sold them the Borgione Property and after he sold the Vaccaro-Nichols Property to Ms. Nichols in 2005. Thus, the evidence showed that the Borgiones had been using their driveway for more than three decades and that their use predated and postdated the severance of the original estate.

{¶22} Mr. Borgione testified that the driveway on the Borgione Property was originally composed of asphalt and gravel. It was his testimony that the apron was asphalt but was covered by "cinders and stuff from the road" and had deteriorated to the point that there were "big chunks that [were] breaking and cracking * * *." When he finally decided to repair the driveway in 2010, Mr. Borgione testified, the company he hired to perform the work excavated out the existing asphalt and poured concrete. Mr. Borgione stated that they "kind of cleaned it up, squared it up a little bit so it didn't look so crummy," but did not increase the size of the apron. He testified that

the new apron was the same size as the old one. Likewise, when Mrs. Borgione later testified, she stated that the new concrete apron was no bigger than the old asphalt apron.

{¶23} The Borgiones both testified that they could not decrease the size of their driveway apron without creating a safety issue. Mr. Borgione explained that the speed limit on their road was 45 miles per hour and that cars routinely traveled over that limit. He testified that, if their driveway apron were narrowed to excise the triangular portion that crossed onto the Vaccaro-Nichols Property, he and his wife would have to slow their vehicles considerably and try to swing further out into traffic to create a bigger turning radius. Moreover, because the northside of their driveway included a mailbox, a telephone pole, and a small ravine, Mr. Borgione testified, it was not possible to expand the driveway to the north. Mr. Borgione described the turn into his driveway without the existing apron as technically possible but "very hard" and "dangerous." Likewise, when Mrs. Borgione testified, she stated that it would be very dangerous to use their driveway without the part of their apron that encroached on the Vaccaro-Nichols property.

{¶24} The Borgiones played for the trial court a videorecording of their driveway, including its apron. The videorecording captured multiple attempts on the part of the Borgiones to use their driveway without driving onto the triangular portion of their apron that crossed onto the Vaccaro-Nichols Property. In the videorecording, the Borgiones used a traffic cone to signify the surveyed property line and block off that triangular portion. Each time, the vehicle driven by Mr. Borgione struck the cone as he attempted to pull into and out of his driveway while avoiding oncoming traffic.

{¶25} Ms. Nichols testified that she purchased the Vaccaro-Nichols Property from Borgione Senior in 2005 and, at that time, there was no discussion about the Borgione Property's driveway apron being partially on her property. She acknowledged that the Borgiones routinely

used the driveway but testified that it did not have a defined apron prior to 2010 and "was mostly dirt and gravel." When the new concrete was poured, Ms. Nichols testified, she was "shocked to see how big [the] apron was." It was her testimony that the new driveway apron was noticeably wider than the old one. Nevertheless, when asked whether any portion of the original driveway had been on her property, Ms. Nichols did not deny that it had been. It was her testimony that "[v]ery little of it was."

{¶26} Mr. Vaccaro testified that, before the Borgiones' concrete driveway was poured in 2010, the Borgiones did not have any defined driveway apron. He indicated that the old driveway was deteriorated and that he would avoid the apron area when he cut the grass because it was filled with stones. Much like Ms. Nichols, Mr. Vaccaro testified that he took "immediate notice" of the new concrete driveway apron after it was poured because it was "so obvious" that it was encroaching on their property. It was his testimony that the new apron was "[a]bsolutely without a doubt" larger than the old one.

{¶27} Both Ms. Nichols and Mr. Vaccaro testified that it would be possible to pull into and out of the Borgiones' driveway if the apron were reduced to the extent that it did not encroach on their property. Mr. Vaccaro indicated that he had experience driving large vehicles and, even with a trailer attached, he would be able to make the turn without incident. Meanwhile, Ms. Nichols testified that she had seen cars that were "able to swing * * * into [the] driveway without coming onto [her] property."

{¶28} During trial, the parties introduced as joint exhibits aerial photographs that captured the Borgione Property, the Vaccaro-Nichols Property, and the surrounding area. The photographs were taken from Google Earth and depicted the area as it existed in 1995, 1999, 2002, 2005, 2009, 2011, 2013, 2017, and 2019. Superimposed on each photograph were property lines for each of

the parcels Borgione Senior created when he severed his estate. Even though that severance did not occur until 2000, the photographs from 1995 and 1999 also depicted those property lines. In each of the nine photographs, the Borgiones' driveway appears to have the same width. Further, even in the photographs from 1995 and 1999, the southern, triangular portion of the driveway's apron appears to be situated on the property that eventually came to be known as the Vaccaro-Nichols Property.

{¶29} The trial court found that, both before and after the Borgiones purchased their property from Borgione Senior, it was understood that the driveway on the Borgione Property served as the property line boundary between what would eventually become the Borgione Property and the Vaccaro-Nichols Property. The court found that the Borgiones used their driveway for many years before the Ms. Nichols purchased her property and continued to do so after her purchase. When the Borgiones eventually replaced the driveway with concrete, the trial court found, "the footprint of the driveway and apron did not appreciably change if at all * * *." The court reached that conclusion upon its review of the aerial photographs and, in so concluding, rejected Ms. Nichols' and Mr. Vaccaro's testimony to the contrary.

{¶30} The trial court found that the Borgiones' use of their driveway apron was obvious at the time Ms. Nichols purchased her property and reasonably necessary for their safety. Regarding the latter, the court found that it would be difficult and unsafe to turn into the driveway without the entire apron due to the speed limit on the road, the layout of the driveway in the context of the road, and the fact that there was a telephone pole, concrete retaining wall, and small ravine to the north of the driveway. Concluding that the Borgiones had proved each of the elements of an implied easement by prior use, the trial court ruled in their favor.

{¶31} Mr. Vaccaro and Ms. Nichols argue that the trial court erred when it determined that the Borgiones had an implied easement by prior use. They concede that the Borgiones proved the first element of that affirmative defense as their two properties were joined before Borgione Senior severed his estate. Nevertheless, they challenge the Borgiones' evidence on each of the remaining elements. *See Ciski*, 122 Ohio St. 487 at syllabus. Ms. Nichols and Mr. Vaccaro argue that any encroachment onto their property did not become obvious until 2010 when the Borgiones replaced the driveway with concrete. Regarding reasonable necessity, Mr. Vaccaro and Ms. Nichols argue that any encroachment onto their property was a matter of convenience rather than necessity. Finally, they argue that there was no evidence Borgione Senior intended to grant the Borgiones a permanent easement. They note that Borgione Senior failed to include any easement in the deeds when he severed the properties. Mr. Vaccaro and Ms. Nichols argue that, at best, the Borgiones had a revocable license that was extinguished by deed when Borgione Senior sold the Vaccaro-Nichols Property.

{¶32} As previously noted, this Court will uphold any findings of fact made by the trial court so long as they are supported by some competent, credible evidence. *Heiney*, 2005-Ohio-5659, at ¶ 16, quoting *Maloney*, 63 Ohio App.3d at 409. Mr. Vaccaro and Ms. Nichols' brief includes an argument that the Borgiones' use of their driveway apron was not obvious because there was a "factual dispute about whether the apron existed prior to 2011." The trial court specifically found, however, that "the footprint of the driveway and apron did not appreciably change if at all" when the Borgiones replaced it in 2010. Mr. Vaccaro and Ms. Nichols have not directly challenged that factual finding or any other factual findings on the part of the trial court. Moreover, the record reflects that the court's findings are based on competent, credible evidence, all of which has been outlined above. Absent any direct challenge to the court's factual findings

on the part of Mr. Vaccaro and Ms. Nichols, this Court will not conduct a more extensive review of those individual findings on their behalf. *See* App.R. 16(A)(7); *Cardone*, 1998 WL 224934, at *8. This Court will limit its review to the sufficiency of the evidence.

{¶33} Viewing the evidence in a light most favorable to the Borgiones, a reasonable trier of fact could have concluded that they had an implied easement by prior use. *See Lynch*, 2012-Ohio-2479, at ¶ 20; *Lubanovich*, 2014-Ohio-2459, at ¶ 8. The Borgiones set forth evidence that (1) Borgione Senior once owned both the Borgione Property and the Vaccaro-Nichols Property, (2) he and the Borgiones understood the existing driveway on the Borgione Property to be the dividing line between the two properties, and (3) the Borgiones' use of their driveway significantly predated and postdated the severance of the two properties, including the time period after which Borgione Senior had the properties surveyed and the time period after Ms. Nichols purchased her property. The foregoing evidence showed that the Borgiones' use of their driveway and its apron was sanctioned by the grantor, Borgione Senior, and was continuous, apparent, and permanent. *See Ciski* at syllabus; *Campbell*, 15 Ohio St.3d at 81. Regarding reasonable necessity, the Borgiones' testimony and their videorecording established that a reduction in the size of their driveway apron would pose a safety concern based on the position of their driveway, traffic conditions on the road, and obstacles at the northern end of the driveway. That evidence served as proof that the easement was reasonably necessary as it "'materially added to the value' of [their] estate." *Hinton*, 1983 WL 4057, at *3, quoting *Baker*, 56 Ohio St. at 478. The fact that some drivers might have been able to execute the turn without the easement was inapposite, as the Borgiones were not required to show that their easement was a matter of absolute necessity. *See Iacomini*, 1993 WL 27389, at *1. *See also Hinton* at *3.

{¶34}  To the extent Mr. Vaccaro and Ms. Nichols argue that any implied easement in favor of the Borgiones violates the merger by deed doctrine, this Court notes that merger by deed is an affirmative defense that forbids purchasers from bringing causes of action based upon prior agreements that are not expressly part of their deed. *Herhold v. Smith Land Co.*, 9th Dist. Summit No. 28915, 2019-Ohio-2418, ¶ 42. Mr. Vaccaro and Ms. Nichols have not shown that the doctrine is applicable herein. *See Meyers Lake Sportsman's Club, Inc. v. Meyers Lake Preserve, Inc.*, 5th Dist. Stark No. 2012CA00198, 2013-Ohio-3227, ¶ 34; *Lone Star Steakhouse & Saloon of Ohio, Inc. v. Ryska*, 11th Dist. Lake No. 2003-L-192, 2005-Ohio-3398, ¶ 51-53. Nor have they shown that, at the time of her purchase, Ms. Nichols was a bona fide purchaser for value who lacked actual or constructive notice of an implied easement. *Compare Renner v. Johnson*, 2 Ohio St.2d 195 (1965). Because the Borgiones set forth sufficient evidence of each element of the affirmative defense of implied easement by prior use, this Court cannot conclude that the trial court erred when it entered judgment in their favor.

{¶35}  Notably, Mr. Vaccaro and Ms. Nichols also have included in their brief an argument about the affirmative defense of implied easement by necessity. The trial court did not rely on that affirmative defense in reaching its decision, however, and, in any event, Mr. Vaccaro and Ms. Nichols have limited their assigned error to the affirmative defense of implied easement by prior use. For the foregoing reasons, this Court declines to address any additional argument they have included about implied easements by necessity. Mr. Vaccaro and Ms. Nichols' third assignment of error is overruled.

**ASSIGNMENT OF ERROR II**

THE TRIAL COURT ERRED WHEN IT APPLIED THE DOCTRINE OF LACHES AGAINST THE APPELLEES.

**{¶36}** In their second assignment of error, Mr. Vaccaro and Ms. Nichols argue that the trial court erred when it concluded that their suit against the Borgiones was barred by the doctrine of laches. The trial court included the doctrine of laches as an alternative basis for its ruling in favor of the Borgiones. We have already determined, however, that the Borgiones were entitled to judgment based on a different affirmative defense, i.e., implied easement by prior use. Given that resolution, we must conclude that Mr. Vaccaro and Ms. Nichols' second assignment of error is moot. Thus, we decline to address it. *See* App.R. 12(A)(1)(c).

### III.

**{¶37}** Mr. Vaccaro and Ms. Nichols' first and third assignments of error are overruled, and their second assignment of error is moot. The judgment of the Lorain County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to

mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellants.

THOMAS A. TEODOSIO
FOR THE COURT

SUTTON, J.
CONCURS.

CARR, P. J.
CONCURS IN JUDGMENT ONLY.

APPEARANCES:

MATTHEW A. MISHAK, Attorney at Law, for Appellants.

MATTHEW A. BOBROWSKI, Attorney at Law, for Appellees.