[Cite as *Dysart v. Circle J, L.L.C.*, 2016-Ohio-869.]

STATE OF OHIO        )              IN THE COURT OF APPEALS
                          )ss:        NINTH JUDICIAL DISTRICT
COUNTY OF WAYNE    )

| | |
|---|---|
| DAVID J. DYSART, et al. | C.A. No. 14AP0027 |
| Appellees | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| CIRCLE J., LLC, et al. | COURT OF COMMON PLEAS COUNTY OF WAYNE, OHIO |
| Appellants | CASE No. 13-CV-0457 |

DECISION AND JOURNAL ENTRY

Dated: March 7, 2016

---

CARR, Presiding Judge.

{¶1} Appellants Jamie and Jody Snyder and Circle J, LLC appeal the judgment of the Wayne County Court of Common Pleas that granted judgment in favor of appellees David and Kathryn Dysart. This Court affirms.

I.

{¶2} Leslie and Joan Maust owned substantial acreage in Wooster, Ohio. In 1996, David and Kathryn Dysart acquired 50 acres of that property from the Mausts. There was one home on the 50 acres acquired in which the Dysarts would reside. As the Mausts and Dysarts thereby owned adjoining properties, the four parties executed five easements at the time of conveyance, three of which granted access by one family over the property of the other for utilities purposes. The document at issue in this case granted a driveway easement from the Mausts as grantors to the Dysarts as grantees. According to this easement, the Dysarts were

granted the right to use an existing driveway, which traversed the Mausts' property, between Pleasant Home Road and their home for residential, farm-related, and home offices purposes.

{¶3} In 2008, the Mausts negotiated to sell almost 86 acres of property to Jamie and Jody Snyder. The real estate purchase contract between the Mausts and the Snyders provided that the Snyders were purchasing the property subject to existing easements, including the driveway easement referenced above. All five easements executed by the Mausts and Dysarts in 1996 were appended to the real estate purchase contract. Title to the property was subsequently transferred pursuant to a general warranty deed from the Mausts to Circle J, LLC, the company which holds the Snyders' farming assets. By all accounts, there were no problems between the Snyders and the Dysarts arising out of the Dysarts' use of the driveway.

{¶4} In 2011, the Dysarts attempted to sell their 50-acre property without success. Later, they arranged to dispose of the property by auction on April 13, 2013. The day before the scheduled auction, however, Mr. Snyder informed the auctioneer that he was unilaterally terminating the driveway easement relative to the Dysarts' property. Believing that no one would bid on a property where access to the home had been called into question, the Dysarts acquiesced in the auctioneer's advice to cancel the auction.

{¶5} The Dysarts filed a four-count complaint against the Snyders and Circle J, LLC (collectively "Circle J"), seeking reformation of the driveway easement to reflect the original parties' intent to create a perpetual easement and seeking damages for diminution in value of the property, defamation of title, and interference with business contract. Circle J answered, generally denying the allegations. The matter proceeded to trial before the bench. At the conclusion of trial, the court issued findings of fact and conclusions of law and entered judgment in favor of the Dysarts, reforming the easement document. Circle J appealed. This Court

dismissed the appeal for lack of a final, appealable order because the Dysarts' three claims for damages remained pending. The trial court subsequently issued a judgment in which it noted that the Dysarts had dismissed their three claims for damages without prejudice immediately prior to trial. The trial court further entered judgment in favor of the Dysarts on their remaining claim and reformed the easement document. Circle J appealed, raising two assignments of error for review. This Court consolidates the assignments of error to facilitate review.

II.

### ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED IN FINDING THAT THE [DYSARTS] WERE GRANTED AN EASEMENT OVER PROPERTY NOW OWNED BY [CIRCLE J].

### ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED IN REFORMING THE PURPORTED "EASEMENT" OVER PROPERTY NOW OWNED BY [CIRCLE J].

{¶6} Circle J argues that the trial court erred by finding that the Dysarts had been granted a driveway easement over the Snyders' property and by reforming the easement document to comport with the original parties' intent in that regard. This Court disagrees.

{¶7} The provision relevant to this matter is contained in paragraph 6 of the driveway easement document, which originally stated:

This Agreement may be amended, or terminated in whole or in part by Grantors **or** Grantees, or their respective successors in title to Parcel 1 and Parcel 2 without the consent of any tenant, lessee, mortgagee or other person claiming by or through them.

(Emphasis added). The trial court reformed the agreement by substituting the word "or" between "Grantors" and "Grantees" with the word "and."

{¶8} The issue below was whether the Mausts granted an easement to the Dysarts to access their home via a driveway that traversed the Mausts' property, or whether the "easement"

agreement merely constituted a license. The Dysarts argued that the original parties intended to create an easement allowing permanent access to the home on the Dysarts' property, rather than a mere license that could be unilaterally terminated by either party. The Dysarts argued that, to the extent that the easement document may have indicated that the easement could be terminated by either the grantors or the grantees, the document contained a mutual mistake as to the parties' intent. Specifically, the Dysarts argued that none of the original parties intended to allow any party to terminate the easement unilaterally. Moreover, the Dysarts argued that the Snyders had both actual and constructive notice of the easement and were, therefore, not bona fide purchasers without knowledge. After considering the evidence presented at trial, the trial court agreed with the Dysarts and reformed the easement document.

{¶9}    The Snyders focus on the plain language in paragraph 6 of the easement document in their first assignment of error in support of their argument that the document merely creates a license. The Dysarts never disputed that the driveway easement document stated that the easement could be terminated by the grantors "or" the grantees. Instead they always argued that the use of the word "or" was a mistake that did not manifest the mutual intent of the original parties to the agreement. Accordingly, the Snyders' reliance on a plain language reading of the agreement is misplaced.

{¶10}  In their second assignment of error, the Snyders argue that the Dysarts failed to present clear and convincing evidence of the original parties' mutual mistake in the drafting of the easement document. In addition, they argue that the Dysarts failed to prove that the Snyders were not bona fide purchasers without knowledge of the easement.

{¶11} Reformation of a written instrument makes it comport with the intended agreement of the parties. *Castle v. Daniels*, 16 Ohio App.3d 209, 212 (2d Dist.1984), citing 1

Restatement of the Law 2d, Contracts 406, Section 155, Comment a (1981). Before the trial court may reform a written agreement, it must find that the party seeking reformation has proven by clear and convincing evidence that the parties were mutually mistaken as to the substance or meaning of the document. *Harvey v. Harvey*, 91 Ohio App.3d 404, 410 (9th Dist.1993). An exception to reformation of a property agreement exists, however, where the opposing party can demonstrate that he was a bona fide purchaser without knowledge of an encumbrance on the property. *Zwaryz v. Wiley*, 11th Dist. Ashtabula No. 98-A-0073, 1999 WL 689940, *2 (Aug. 20, 1999).

{¶12} In reviewing the quantum of proof, a reviewing court

> will not generally consider the mere weight of the evidence; but, where the law requires in a particular case a higher quality and quantity of evidence than is sufficient in ordinary cases to support the judgment by the preponderance of the proof, [a reviewing] court will consider whether the [trial] court applied the proper rule of proof and the evidence attains to that higher degree of probative value to constitute clear and convincing proof.

*Frate v. Rimenik*, 115 Ohio St. 11, 18 (1926).

{¶13} "An easement is a property interest in the land of another that allows the owner of the easement a limited use of the land in which the interest exists." (Internal quotations omitted) *Merrill Lynch Mtge. Lending, Inc. v. Wheeling & Lake Erie Ry. Co.*, 9th Dist. Summit No. 24943, 2010-Ohio-1827, ¶ 10. An easement is created by agreement whereby the servient estate confers a benefit upon the dominant estate, granting "some lawful use out of or from the estate of another." *Warren v. Brenner*, 89 Ohio App. 188, 192 (9th Dist.1950). As a property interest, an easement runs with all transfers of the dominant estate. *Merrill Lynch*, 2010-Ohio-1827, at ¶ 11.

{¶14} A license, by contrast, is a "personal, revocable, and nonassignable privilege * * * to do one or more acts upon land without possessing any interest [in the land]." *Yeager v. Tuning*, 79 Ohio St. 121, 124 (1908). "A license is present where an easement or a tenancy is

granted, but if no interest in land is proposed to be created and nothing beyond a mere temporary use of the land is promised, there is nothing but a bare license. It depends * * * upon the intention of the parties." *Bozzelli v. H.H. Seff Advertising Co.*, 9th Dist. Summit No. 1776, 1930 WL 2221, *3 (Apr. 4, 1930).

{¶15} At trial, Leslie Maust testified that in 1984, he and his wife bought 158 acres of land in Wayne County. Located on that acreage was the house in which the Dysarts now reside, the house being accessible from Pleasant Home Road via the same driveway at issue in this case. In 1996, the Mausts sold 50 acres of land along with the above-referenced house to the Dysarts. Along with four other easements, the Mausts and Dysarts executed a document whereby the Mausts granted an easement to the Dysarts for use of the driveway over the Mausts' retained property. All five easements were recorded.

{¶16} Mr. Maust testified that he directed his attorney to draft the agreement to "guarantee access to the house that's on that 50 acres." He emphasized that his intention was to allow permanent access to the house over that driveway for as long as the house existed. Moreover, he testified that the parties intended not to give either the grantors or grantees the unilateral ability to terminate the easement. Although the modification/termination provision in paragraph 6 of the easement contains the word "or," Mr. Maust testified that the parties did not negotiate that term. Nor did Mr. Maust instruct the drafting attorney to use the word "or."

{¶17} All five easements granted by either the Mausts or the Dysarts to the other in 1996, contained similar modification/termination provisions. Mr. Maust acknowledged that, while three of the easements contained the word "or" in that provision, two easements utilized the word "and." Nevertheless, Mr. Maust was clear that all five easements were intended to be permanent and not unilaterally terminable by either party. Although he read all five easement

agreements prior to signing, it did not occur to him that the "or" language in the termination provisions could allow for unilateral termination.

{¶18} Morris Stutzman testified that he has 39 years of experience as an attorney focusing on real estate, business, trust, and estate law. He is also a licensed title agent and has drafted hundreds of easement agreements. He presented the five easement agreements in this case to the Mausts and Dysarts, although his office staff would have prepared the documents using templates containing certain boilerplate provisions. Mr. Stutzman testified that the modification/termination provisions in the easements were boilerplate provisions and that the parties did not negotiate the use of any terms in those provisions. He could not explain why some easements used the word "or" while others used the word "and" between grantors and grantees in the termination provisions except to surmise that different office staff may have utilized different templates. Attorney Stutzman testified that, while he reviewed the easements and discussed them with the Mausts and Dysarts, he too did not recognize the mistake in the termination provisions containing the word "or." He admitted, however, that use of the word "or" was a mistake and that his office was responsible for the mistake.

{¶19} Attorney Stutzman defined an "easement" as "an interest in real property, whereby the owner of the easement has limited use of the property of another." He characterized easements as interests running with the land, being assignable, and being perpetual unless terminated by the acts of both parties or by operation of law. He emphasized that easements cannot be terminated unilaterally by any individual party. He defined a "license" as "a personal right or privilege granted by the owner of property." He clarified that licenses do not convey a property interest, are not assignable, and do not run with the land so that they cease when the

property is conveyed. Significantly, licenses are revocable and can be terminated unilaterally by the grantor.

{¶20} With regard to the Maust-Dysart easements, Attorney Stutzman testified that, after conferring with the parties, he intended to draft agreements that could not be terminated unilaterally by either the grantor or grantee. He pointed to multiple reasons why the agreements were easements not subject to unilateral termination. First, he testified that in his practice he would never title a document as an "easement" (as the agreements here were titled) if it could be terminated unilaterally by any party. Second, these agreements were recorded, and there would be no reason to publicly record a mere license. Third, other provisions in the driveway easement supported the conclusion that neither party could unilaterally terminate the agreement. For example, paragraph 2 establishes the limitations of the easement for "residential, farm-related or home office purposes" solely for the grantees, their heirs, successors, and assigns only as to the single family residence. In the event of a subdivision of the property, grantees are precluded from granting a license to any person who is not the owner of the property on which the current home sits. Paragraph 2 further provides the sole means of unilateral termination by the grantor where the grantee uses the easement beyond the enunciated scope or where the grantee grants a license to owners or inhabitants of subdivided lots. Attorney Stutzman testified that there was no reason to include a specific unilateral termination provision if either party could otherwise unilaterally terminate the agreement.

{¶21} Attorney Stutzman cited to two other provisions in the agreement to support the conclusion that all parties intended to create a perpetual easement rather than a mere license. He noted that paragraph 3 allows the grantees to assign their interest, a characteristic of an easement but not a license. Finally, he noted paragraph 8 which specifically directs that the agreement

"shall run with [the land] and be binding upon and inure to the benefit of Grantors and Grantees and their respective heirs, personal representatives, successors and assigns." Attorney Stutzman emphasized that only an easement can run with the land, while a license cannot.

{¶22} David Dysart testified that when he and his wife bought the subject property in 1996 from the Mausts, the parties all discussed their intent to create an easement granting permanent access to the home via the existing driveway. He described the agreement as a means to safeguard the rights of all the property owners. Moreover, Mr. Dysart cited to paragraph 4 of the easement which sets out the mutual obligations of the grantors and grantees to pay an assigned portion of the maintenance and repair costs for the easement driveway. He testified that he would never have agreed to assume any financial responsibility for the driveway on the Mausts' property if he believed that the grantors could unilaterally terminate the easement at any time. Finally, he testified that he would never have purchased the property if he believed that the grantors could deprive him of access to the roadway.

{¶23} Kathryn Dysart testified that her understanding and intent in signing the easement documents coincided with her husband's. Neither spouse negotiated the language in the termination provision of the easement, and neither realized the mistaken use of the word "or" in that provision.

{¶24} Upon review, this Court concludes that the trial court applied the proper rule of proof and correctly determined that the Dysarts proved by clear and convincing evidence that the driveway easement document contained a mutual mistake with regard to the modification/termination provision in paragraph 6. Although that provision's use of the word "or" indicated that either the grantors or the grantees had the authority to unilaterally terminate the driveway access to the house on the Dysarts' property, the parties to the agreement, as well

as the attorney who drafted the agreement after consultation with the parties, testified that the intent was to create an easement granting permanent access to the house, not a mere license. Moreover, the document was titled "easement," it contained other provisions which specifically provided for unilateral termination, and the instrument was recorded, all further indicia of the parties' intent to create an easement rather than a license. Accordingly, reformation of the easement agreement was proper unless the Snyders were bona fide purchasers of the Maust property without knowledge of the easement.

{¶25} Generally, a court may not reform an instrument as against a bona fide purchaser without notice of the encumbrance. *Zwaryz v. Wiley*, 11th Dist. Ashtabula No. 98-A-0073, 1999 WL 689940, *2 (Aug. 20, 1999). Notice may be either constructive or arise from actual knowledge. *Emrick v. Multicon Builders, Inc.*, 57 Ohio St.3d 107, 109 (1991). Where an encumbrance has been recorded, a subsequent purchaser is charged with constructive notice. *See Tiller v. Hinton*, 19 Ohio St.3d 66, 68 (1985).

{¶26} In this case, a copy of the recorded driveway easement was admitted into evidence. The easement was filed for record in Volume 26, page 95, on June 17, 1996, in Wayne County.

{¶27} Moreover, Attorney Stutzman testified that he facilitated the real estate transaction between the Mausts and the Snyders whereby the Snyders purchased the land encompassing the driveway over which the Dysarts were granted an easement. The real estate purchase contract (admitted as Exhibit Q) contains a section captioned "Subject to Existing Easements/Agreements" in capital letters and bold font. The section states that "Buyer is purchasing the property subject to the following Easements and Agreements[,]" and thereafter delineates each of the five easements created between the Mausts and Dysarts in 1996. Each

easement description includes the date, volume number, and page number of the Wayne County Official Records in which the easement is recorded. In addition, a copy of each easement agreement is attached to the real estate purchase contract. In addition, the general warranty deed (admitted as Exhibit R) transferring the property from the Mausts to the Snyders contains the following notices: (1) "This parcel is subject to an easement recorded in Official Record Volume 26, Page 95." (2) "The real property described above is conveyed free from all encumbrances except taxes, easements, covenants, conditions and restrictions of record[.]"

{¶28} At trial, Jamie Snyder testified that he was aware of the easements when he bought the Mausts' property in 2008. He received a copy of the easement agreements during price negotiations for the property and read them. His attorney also reviewed all documents associated with the Snyders' purchase of the property. Although the documents did not make a lot of sense to him, Mr. Snyder testified that he did not know how the easements could be terminated. Accordingly, he could not have believed that one party could unilaterally terminate the driveway easement. In fact, Mr. Snyder testified that he never believed that he had unilateral authority to terminate the driveway easement until April 12, 2013, after he asked his attorney to review the easement documents. The same attorney had originally reviewed the purchase contract with the Snyders. Until 2013, Mr. Snyder had no issues with the Dysarts' continuing use of the driveway and only became concerned that any new owners of the Dysart property might drive recklessly over the driveway and be a threat to potential grandchildren he might have.

{¶29} Based on a review of the record, it is clear that the Snyders had at a minimum constructive notice of the driveway easement when they purchased the Mausts' property. The easement was recorded, and the real estate purchase agreement referenced the easement and

identified the volume and page number in the Wayne County Records where the easement agreement was recorded. In addition, a copy of the easement was appended to the real estate purchase agreement. Both Mr. Snyder and his attorney reviewed all documents relevant to the purchase of the land. Mr. Snyder conceded that he had no reason to believe that he could have unilaterally terminated the driveway easement, and in fact had no issue with acknowledging a permanent easement while the Dysarts were living on the dominant estate because they were prudent drivers. Under these facts, where the Snyders had notice of the encumbrance when they purchased the servient estate, they were not bona fide purchasers without notice. Accordingly, there was no evidence to establish an exception to the trial court's authority to reform the easement agreement to conform to the original parties' understanding based on the parties' mutual mistake.

{¶30} For the above reasons, Circle J's assignments of error are overruled.

III.

{¶31} Circle J's assignments of error are overruled. The judgment of the Wayne County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the

period for review shall begin to run.  App.R. 22(C).  The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellants.

DONNA J. CARR
FOR THE COURT

WHITMORE, J.
MOORE, J.
CONCUR.

APPEARANCES:

RALPH F. DUBLIKAR and KARA D. WILLIAMS, Attorneys at Law, for Appellants.

DAVID W. ZACOUR, Attorney at Law, for Appellee.

NORMAN R. "BING" MILLER, JR., Attorney at Law, for Appellee.