[Cite as *Zola Properties v. Reed Salvage Corp.*, 2026-Ohio-1139.]

| | | | |
|---|---|---|---|
| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | | |

ZOLA PROPERTIES, LLC, et al.

    Appellants

    v.

REED SALVAGE CORP.

    Appellee

C.A. No.    25CA012234

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.    23CV208056

DECISION AND JOURNAL ENTRY

Dated: March 31, 2026

---

FLAGG LANZINGER, Presiding Judge.

{¶1}    Plaintiffs-Appellants, Zola Properties, LLC ("Zola"), Oscar's Party Center, LLC ("Oscar's"), and Bella's Creamery, LLC ("Bella's"), (collectively "Zola parties") appeal the judgment of the Lorain County Court of Common Pleas granting partial summary judgment to Defendant-Appellee, Reed Salvage Corp. ("Reed Salvage"). For the reasons that follow, we reverse and remand for further proceedings consistent with this decision.

I.

{¶2}    This matter involves a dispute between adjacent landowners. Zola is the owner of real property located at 36709 Royalton Road in Grafton, Ohio ("Zola Property"). Royalton Road runs along the northern edge of the Zola Property. Oscar's and Bella's are tenants upon the Zola Property. During the relevant time period, Reed Salvage owned two parcels of real property adjacent to the Zola Property. One parcel is located immediately south of the Zola Property ("Reed Property"). The second parcel is located at 36521 Royalton Road in Grafton, Ohio, and is

immediately to the east of both the Zola Property and the Reed Property. Reed Salvage owns and operates a salvage yard on the second parcel ("Reed Salvage Yard").

{¶3}    Prior to 2017, the Zola Property and the Reed Property were part of a single parcel owned by Sheila Fishburn and her late husband. The parcel included a dirt road along the eastern edge of the property providing access from Royalton Road to the southern portion of the parcel. In 2017, the Fishburns split the parcel into the two separate parcels that would become the Reed Property and the Zola Property. On April 18, 2018, Reed Salvage purchased the southern back parcel. On March 27, 2020, Abdall Nimer, the owner of Zola, purchased the northern front parcel. On January 20, 2021, Nimer caused a quit claim deed to be filed and recorded that transferred his interest in the Zola Property to Zola.

{¶4}    There is no recorded or written easement, right of way, or license permitting Reed Salvage to use the Zola Property for ingress and egress to access the Reed Property. However, it is undisputed that Reed Salvage, its tenants, and customers have continuously utilized the eastern edge of the Zola Property for ingress and egress to the Reed Property.

{¶5}    On December 26, 2022, Zola sent Reed Salvage a letter advising Reed Salvage to cease and desist its use of the Zola Property for ingress and egress to the Reed Property and that any continued use would be considered trespass. Reed Salvage continued to use the Zola Property for ingress and egress to the Reed Property.

{¶6}    On February 2, 2023, the Zola parties filed a complaint against Reed Salvage asserting claims of (1) encroachment related to the creation and use of a sanitary sewer line and (2) trespass related to the continued use of the Zola Property to access the Reed Property. The complaint sought compensatory damages for Reed Salvage's alleged encroachment and trespass, reasonable attorney fees, pre- and post-judgment interest, and any other equitable relief the trial

court deemed just and proper. The complaint also requested temporary, preliminary, and permanent injunctive relief enjoining Reed Salvage from continuing to exercise improper dominion over the Zola Property by encroaching and trespassing on the property.

{¶7} Reed Salvage filed an answer. In its answer, Reed Salvage asserted Zola could not maintain a trespass claim against it because Reed Salvage has an implied easement as to the sewer line and the driveway by necessity, prior use, and/or estoppel over the Zola Property.

{¶8} Contemporaneous with their complaint, the Zola parties filed a motion for temporary restraining order and preliminary injunction. The parties filed written stipulations before the matter proceeded to a hearing before a magistrate. The magistrate heard testimony from the Zola parties' witnesses, Craig Reed, Nimer, and Tracy Homenik. The magistrate also heard testimony from Reed Salvage's witnesses, Mark Sutula and Craig Reed. The magistrate admitted as evidence the Zola parties' Exhibits 1-10 and Reed Salvage's Exhibits 6 and 12. Following the hearing, the trial court filed an order denying the Zola parties' request for a preliminary injunction.

{¶9} After a period of discovery, Reed Salvage moved for partial summary judgment on the Zola parties' claim for trespass specifically related to Reed Salvage's use of the Zola Property for ingress and egress to the Reed Property. The Zola parties filed a response in opposition and Reed Salvage filed a reply in support of its motion.

{¶10} On January 16, 2025, the trial court granted Reed Salvage's motion for partial summary judgment. The trial court determined Reed Salvage had an implied easement by prior use and that the easement was enforceable against the Zola parties because Zola was not a bona fide purchaser. On March 14, 2025, the trial court filed an order granting partial summary judgment to Reed Salvage with Civ.R. 54(B) language.

{¶11}  Zola Properties timely appealed the March 14, 2025 order raising one assignment of error.

II.

**ASSIGNMENT OF ERROR**

**THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT/APPELLEE FINDING THAT DEFENDANT/APPELLEE HAD AN IMPLIED EASEMENT BY PRIOR USE OF INGRESS AND EGRESS OVER PLAINTIFFS/APPELLANTS' REAL PROPERTY.**

{¶12}  In their sole assignment of error, the Zola parties contend the trial court erred in granting partial summary judgment to Reed Salvage on their trespass claim related to the driveway. The Zola parties contend there remain genuine issues of material fact as to whether Reed Salvage had privilege to enter the Zola Property.  Specifically, whether (1) Reed Salvage had a valid implied easement, and (2) Reed Salvage's alleged implied easement could be enforced against the Zola parties.  We agree.

{¶13}  This Court reviews an award of summary judgment de novo.  *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996).  "We apply the same standard as the trial court, viewing the facts in the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party." *Husa v. Knapp*, 2020-Ohio-6986, ¶ 19 (9th Dist.), citing *Viock v. Stowe-Woodward Co.*, 13 Ohio App.3d 7, 12 (6th Dist. 1983).  Pursuant to Civ.R. 56(C), summary judgment is appropriate when:

> (1) [n]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977). To succeed on a motion for summary judgment, the movant must first be able to point to evidentiary materials demonstrating there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). If the movant satisfies this burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 293, quoting Civ.R. 56(E). "Before ruling on a motion for summary judgment, the trial court's obligation is to read the evidence most favorably for the nonmoving party to see if there is a 'genuine issue of material fact' to be resolved." *Byrd v. Smith*, 2006-Ohio-3455, ¶ 12. "Only if there is none does the court then decide whether the movant deserves judgment as a matter of law." *Id.*

{¶14} Relevant here, the Zola parties alleged in their complaint that Reed Salvage had trespassed upon the Zola Property through the continued use of the Zola Property for ingress and egress to the Reed Property. "'A common-law tort in trespass upon real property occurs when a person, *without authority or privilege*, physically invades or unlawfully enters the private premises of another whereby damages directly ensue[.]'" (Emphasis in original.) *State ex rel. Nix v. Bath Twp.*, 2011-Ohio-5636, ¶ 24 (9th Dist.), quoting *Apel v. Katz*, 83 Ohio St.3d 11, 19 (1983).

{¶15} In its answer, Reed Salvage denied that its entry upon the Zola Property was unauthorized and asserted it had an implied easement by prior use. "An easement is a property interest in the land of another that allows the owner of the easement a limited use of the land in which the interest exists." *Du v. Nottingham Gate Estates. HOA, Inc.*, 2024-Ohio-6090, ¶ 19 (9th Dist.), quoting *Dysart v. Circle J., L.L.C.*, 2016-Ohio-869, ¶ 13 (9th Dist.). As such, "[a] cause of action in trespass will not lie when the purported trespasser holds an easement to the property on which it is purportedly trespassing." *Naiman v. Cleveland Elec. Illuminating Co.*, 2025-Ohio-

1060, ¶ 25. "'[A]n easement may be created by specific grant, prescription, or implication which may arise from the particular set of facts and circumstances.'" *Vaccaro v. Borgione*, 2022-Ohio-3473, ¶ 19 (9th Dist.), quoting *Campbell v. Great Miami Aerie No. 2309, Fraternal Order of Eagles*, 15 Ohio St.3d 79, 80 (1984).

## 1. Reed Salvage's Alleged Implied Easement

{¶16}   In its motion for partial summary judgment, Reed Salvage argued it was entitled to judgment on Zola's trespass claim because the undisputed evidence showed it had privilege to enter the Zola Property pursuant to an implied easement by prior use. "An implied easement of use arises from the severance of property and transfer of land that at one time had a common owner, with the use in question in existence prior to severance." *Vaccaro* at ¶ 19, quoting *Sargeant v. Sampson*, 1999 WL 195019, *3 (9th Dist. Mar. 31, 1999). A party seeking to establish an implied easement of use must prove:

> (1) A severance of the unity of ownership in an estate; (2) that, before the separation takes place, the use which gives rise to the easement shall have been so long continued and obvious or manifest as to show that it was meant to be permanent; (3) that the easement shall be reasonably necessary to the beneficial enjoyment of the land granted or retained; [and] (4) that the servitude shall be continuous as distinguished from a temporary or occasional use only.

*Vaccaro* at ¶ 19, quoting *Ciski v. Wentworth*, 122 Ohio St. 487 (1930), syllabus.

> Considered in conjunction with the four necessary elements, an implication via prior use is based on the theory that "where an owner of land makes an apparent, permanent, and necessary use of one part of his land in favor of another part, and transfers either or both parts, the grant or reservation of an easement to continue such existing use will be implied."

*Cadwallader v. Scovanner*, 2008-Ohio-4166, ¶ 36 (12th Dist.), quoting *Freiden v. W. Bank & Trust Co.*, 72 Ohio App. 471 (1st Dist. 1943). "When no granting instrument exists . . . , a trial court's findings on what the parties' intent was and for what purpose the easement was created are largely factual issues." *Dunn v. Ransom*, 2013-Ohio-5116, ¶ 9 (4th Dist.).

{¶17} On appeal, the Zola parties concede there is no dispute that there was a severance in the unity of ownership and that the use of the servitude was continuous rather than temporary or occasional. However, they argue there remain genuine issues of material fact regarding whether a valid easement was created. Specifically, whether (1) Reed Salvage's use of the Zola Property for ingress and egress was so long continued and obvious to show it was meant to be permanent, and (2) the alleged implied easement was reasonably necessary to the beneficial enjoyment of the Reed Property.

a. Continuous and Obvious Use

{¶18} "[T]he supreme court has recognized that '[f]or a use to be permanent in character * * * a mere temporary provision or arrangement made for the convenience of the entire estate will not constitute that degree of permanency required to burden the property with a continuance of the same when divided or separated by conveyance to different parties.'" *Raines v. Hodgson*, 2020-Ohio-3404, ¶ 71 (12th Dist.), quoting *Trattar v. Rausch*, 154 Ohio St. 286, 292 (1950). A court should "focus on evidence of the easement's permanence, by looking not only at continuity of use, but also examining whether the use was 'apparent.'" *Dunn v. Ransom*, 2011-Ohio-4253, ¶ 58 (4th Dist.), quoting *Baker v. Rice*, 56 Ohio St. 463 (1897), syllabus. "For a use to be apparent, it must be 'plainly visible.'" *Dunn* at ¶ 58, quoting *Campbell*, 15 Ohio St.3d at 80 (1984).

{¶19} In its motion for partial summary judgment, Reed Salvage argued the use of the dirt road on the Zola Property for ingress and egress to the Reed Property was so long continued and obvious or manifest as to show it was meant to be permanent. In support of its argument, Reed Salvage pointed to the preliminary injunction testimonies of Reed and Sutula and the parties' stipulations to support its claim. Reed testified at the preliminary injunction hearing that Reed Salvage had used the Zola Property to access the Reed Property prior to Mr. Nimer's purchase of

the property. Reed also stated that a dirt road had existed along the eastern edge of the Fishburns' unsplit parcel since his childhood. Reed further testified that he believed he had an easement to use the dirt road and had done so consistently since purchasing the Reed Property from the Fishburns. Reed stated Mr. Fishburn told him he could "use that road anytime." Sutula testified at the preliminary injunction hearing that the Cleveland R.C. Club used the dirt road to access the back portion of the Fishburns' unsplit parcel since at least 2007, and had continued to do so after the Fishburns sold the back portion to Reed Salvage. The parties' Stipulation number 10 states that "Reed, its tenants, employees, invitees (business or otherwise), agents and customers currently use the Zola Property for vehicle and pedestrian traffic for ingress and egress to and from the Reed Property. This use has been continuous since Zola purchased the Zola Property."

{¶20} Reed Salvage's summary judgment evidence suggests (1) a dirt road existed along the eastern edge of the Fishburns' unsplit parcel for several decades prior to the severance of the parcels, (2) the Fishburns and the Cleveland R.C. Club had used the dirt road to access the back portion of the Fishburns' unsplit parcel prior to the separation, and (3) Reed Salvage and the Cleveland R.C. Club continued to use the dirt road for ingress and egress to the Reed Property after severance.

{¶21} In their reply in opposition, the Zola parties asserted there remained a genuine issue of material fact regarding whether the use of the dirt road was so long continued and obvious as to show it was meant to be permanent because (1) the parties' only stipulated that the Zola parties had knowledge of Reed Salvage's use of the Zola Property for ingress and egress after purchasing the Zola Property, and (2) Reed Salvage did not point to any evidence showing the Zola parties had any knowledge of Reed Salvage's use of the Zola Property prior to purchase.

**{¶22}** Whether the Zola parties had knowledge of Reed Salvage's use of the dirt road prior the purchase of the Zola Property is immaterial. The relevant inquiry is not whether any specific individual's continued use of the implied easement years after the separation was known by a third party. Rather, the inquiry is whether the use of the implied easement (the dirt road) was so long continued and obvious *before separation* took place (when the Fishburns sold the back portion of the original parcel to Reed Salvage) to show it was meant to be permanent. *See Vaccaro*, 2022-Ohio-3473, at ¶ 19 (9th Dist.), citing *Ciski*, 122 Ohio St. at 487. "[I]mplied easements apply when there is an easement appurtenant, since they run with the land and are transferable to future buyers." *Stone Collector, Inc. v. Northeast Ohio Natural Gas Corp.*, 2023-Ohio-2650, ¶ 33 (11th Dist.).

**{¶23}** Our review of the Zola parties' reply in opposition shows they raised no argument on this issue and failed to point to any specific facts showing there was a genuine issue for trial. Instead, the Zola parties only asserted there was a genuine issue of material fact regarding whether the Zola parties were bona fide purchasers of the Zola Property without knowledge of the alleged implied easement. The Zola parties' alleged lack of knowledge is not a specific fact showing a genuine issue for trial regarding whether an implied easement existed in this case.

**{¶24}** Based on the above, we conclude that Reed Salvage met its initial burden to point to evidentiary material demonstrating there were no genuine issues of material fact that the use of the dirt road over the front portion of the Fishburns' unsplit parcel (later the Zola Property) for ingress and egress to the back portion (later the Reed Property) was so long continued and obvious or manifest as to show it was meant to be permanent. *See Dresher*, 75 Ohio St.3d at 292. We further conclude that the Zola parties failed to "set forth specific facts showing that there is a

genuine issue for trial" in their reply in opposition regarding the continuous use and obvious use of the dirt road. *Id.* at 293, quoting Civ.R. 56(E).

{¶25} While not determinative of the issue of permanency, we note that the Zola parties' argument that there remains a genuine issue of material fact as to whether the Zola parties were bona fide purchasers is still relevant to whether any alleged implied easement can be enforced against them. We will address this issue below since the Zola parties fully developed this argument in their reply in opposition to the motion for summary judgment and in their merit brief on appeal.

b. Reasonable Necessity

{¶26} Regarding the element of reasonable necessity, "this Court has recognized that '[a]bsolute necessity is not required.'" *Vaccaro*, 2022-Ohio-3473, at ¶ 19 (9th Dist.), quoting *Iacomini v. Cogdeill*, 1993 WL 27389, *1 (9th Dist. Feb. 3, 1993). "Unlike an implied easement by necessity, an implied easement by prior use requires only a showing that the easement is reasonably necessary and has materially added to the value of the [dominant] estate." (Internal quotations and citations omitted.) *Vaccaro* at ¶ 19. "[C]onvenience alone is not enough." *Trattar*, 154 Ohio St. at 292. "Notably: 'The necessity that serves as the basis for an implied easement must exist upon the severance of ownership.'" *Anderson v. Fleagane*, 2022-Ohio-1120, ¶ 34 (7th Dist.), quoting *Arkes v. Gregg*, 2005-Ohio-6369, ¶ 14 (10th Dist.).

{¶27} In its motion for summary judgment, Reed Salvage noted the Zola parties continued to dispute whether the alleged implied easement is reasonably necessary to the beneficial enjoyment of the land granted or retained. Reed Salvage claimed that no other means of access currently existed to enter the Reed Property other than over the Zola Property. Reed Salvage argued that the lack of an existing alternative means of access was sufficient to show there was no

genuine issue of material fact regarding the reasonable necessity of its alleged implied easement. To support its claims, Reed Salvage pointed to the Reed Affidavit.

{¶28} In the Reed affidavit, Reed averred the Reed Property "is landlocked by the Zola Property to the north, by residential and agricultural land to the west and south, and by the Salvage Property to the east." However, Reed also indicated that Reed Salvage owned and operated the salvage yard and private landfill to the east of the Zola Property. Reed further averred Reed Salvage has used the Zola Property for ingress and egress since purchasing the Reed Property and that the Zola Property is currently the only means of access to the Reed Property. Reed averred it may be physically possible to construct a road through the salvage yard property to the east. However, such a roadway would require substantial construction. Additionally, he asserted that any such roadway would need to be locked during the non-operating hours of the salvage yard because the property is a licensed construction and demolition debris facility.

{¶29} The Zola parties argued in their response in opposition that Reed Salvage's use of the Zola Property is not reasonably necessary because it (1) imposes an unreasonable safety concern upon the Zola parties and their customers, (2) Reed Salvage owned a contiguous parcel at the time it purchased the Reed Property, and (3) Reed Salvage had acquired an additional contiguous parcel that would allow ingress and egress to State Route 82. The Zola parties acknowledged that Reed Salvage did not need to prove absolute necessity. However, they asserted a trial court must still consider alternative reasonable means when determining whether an alleged implied easement is in fact reasonably necessary. Although the Zola parties questioned whether construction of a new roadway through the salvage yard would be difficult to construct, the Zola parties maintained they needed an expert to enter upon the salvage yard property to determine what would be necessary for construction. To show that Reed Salvage owned two separate parcels

adjacent to the Reed Property, one of which it owned before purchasing the Reed Property, the Zola parties pointed to a Lorain County Auditor Tax Card and a Lorain County Auditor Tax Map.

{¶30} Here, Reed Salvage met its initial burden to point to evidentiary material demonstrating reasonable necessity. *See Dresher*, 75 Ohio St.3d at 292. Nonetheless, the Zola parties met their reciprocal burden to "set forth specific facts showing that there is a genuine issue for trial" regarding that reasonably necessity. *Id.* at 293, quoting Civ.R. 56(E). When viewing all of the summary judgment evidence in a light most favorable to the Zola parties, a reasonable factfinder could conclude that Reed Salvage's use of the Zola Property to access the Reed Property was not reasonably necessary where Reed Salvage owned an adjacent parcel at the time it purchase the Reed Property from the Fishburns.

c. Trial Court's Order

{¶31} Whether an implied easement is reasonably necessary is a heavily fact-based determination. In its order granting summary judgment, the trial court determined Reed Salvage's alleged implied easement was reasonably necessary based on a finding that the Reed Property was "completely landlocked" and there was no other access point used for ingress and egress to the Reed Property. In making its findings, the trial court improperly weighed Reed Salvage's evidence regarding the difficultly of accessing the Reed Property from its adjacent parcel against the Zola parties' evidence that Reed Salvage owned an adjacent parcel prior to and at time of severance of the unity of ownership of the original Fishburn parcel.

{¶32} However, "[i]n ruling on a motion for summary judgment, a trial court may not weigh the evidence and determine issues of fact." *Horner v. Elyria*, 2015-Ohio-47, ¶ 10 (9th Dist.). Additionally, findings of fact are not appropriate in a ruling on a motion for summary judgment because "[a] 'finding' is the determination of an issue of fact.'" *Tucker v. Kanzios*, 2009-Ohio-

2788, ¶ 15 (9th Dist.), citing Henry Weihofen, Legal Writing Style 30 (2d Ed. 1980). "[I]t is firmly established that the purpose of summary judgment is not to try issues of fact, but rather for the court to determine whether triable issues of fact exist." *Tucker* at ¶ 15, quoting *Claeys v. Bowser-Morner Inc.*, 1997 WL 368259, * 8 (2d Dist. July 3, 1997). A "'trial court can state as a basis for its decision the stipulated facts or undisputed facts, but it cannot find facts that are genuinely disputed and are material.'" *Tucker* at ¶ 15, quoting *Koch v. Etna Twp.*, 1991 WL 148092, * 1 (5th Dist. July 18, 1991).

## 2. Enforceability of Reed Salvage's Alleged Implied Easement

{¶33}   On appeal, the Zola parties also assert that there remains a genuine issue of material fact as to whether Zola is a bona fide purchaser without knowledge of the alleged implied easement. We agree.

### a. Zola's Alleged Status as a Bona Fide Purchaser

{¶34}   "Easements are encumbrances." *Johnson v. Waterville Gas & Oil Co.*, 2009-Ohio-4061, ¶ 17 (6th Dist.).

> As such, they are subject to the recording requirements of R.C. 5301.25, which provides that all instruments of writing encumbering land shall be recorded, and "until so recorded or filed for record, they are fraudulent, so far as relates to a subsequent bona fide purchaser having, at the time of purchase, no knowledge of the existence of such * * * instrument."

*Id.* "In Ohio, '[i]mplied easements are not favored because they are in derogation of the rule that written instruments speak for themselves.'" *Cadwallader*, 2008-Ohio-4166, at ¶ 10 (12th Dist.), quoting *Trattar*, 154 Ohio St. at 291. Pursuant to R.C. 5301.25, "a bona fide purchaser for value is bound by an encumbrance upon land only if he has constructive or actual knowledge of the encumbrance." *Tiller v. Hinton*, 19 Ohio St.3d 66, 68 (1985).

{¶35} In their response in opposition, the Zola parties argued that Zola was a bona fide purchaser of the Zola Property without knowledge of the alleged implied easement. Consequently, even if Reed Salvage could establish the elements of an implied easement, it would not be enforceable against the Zola parties. The Zola parties asserted that Reed Salvage had failed to point to any "evidence [in its motion for summary judgment] that the Zola [p]arties had knowledge that Reed [Salvage] had an implied easement of ingress and egress over the Zola Property" at the time Nimer purchased the Zola Property. The Zola parties noted that the parties' stipulations only show that they stipulated to knowledge of Reed Salvage's use of the Zola Property *after* Nimer's purchase.

{¶36} In *Tiller*, the Supreme Court of Ohio stated that pursuant to R.C. 5301.25, "a bona fide purchaser for value is bound by an encumbrance upon land only if he has constructive or actual knowledge of the encumbrance." *Tiller* at 68. However, "the *Tiller* Court discussed only items in the recorded chain of title when determining the purchaser had no constructive notice." *Johnston v. Shale Play Land Servs., Inc. & Taurus Corp. & Andrews*, 2024-Ohio-5934, ¶ 61 (7th Dist.), citing *Emrick v. Multicon Builders, Inc.*, 57 Ohio St.3d 107, 109 (1991). In explaining "the meaning of knowledge as used in R.C. 5301.25(A), the Supreme Court in *Emrick* reaffirmed the traditional rule:

> [W]hen it appears that the party was a purchaser for value it is not a defense in support of a claim based on an unrecorded deed to show that he took title under circumstances which ought to have excited apprehension and inquiry in the mind of a prudent and reasonable man. No other view will give effect to the statute. Its words make absence of knowledge of the release at the time of the purchase the test; not absence of that which might induce inquiry. A holding which would substitute constructive notice, in the absence of a record, for actual knowledge, would clearly violate this statute. . . . The burden of showing such actual knowledge, therefore, was on the [party seeking to enforce the unrecorded encumbrance.]

(Alterations in original.) *Johnston* at ¶ 62, quoting *Emrick* at 109. Thus, in the context of Ohio's recording statute, "[c]onstructive notice is in legal effect the equivalent of actual notice." *Ford v. Baska*, 2017-Ohio-4424, ¶ 13 (7th Dist.), quoting *Ferguson v. Zimmerman*, 1986 WL 878, *5 (2d Dist. Jan. 16, 1986). "[A]ll persons dealing with the land in question are chargeable with constructive notice of properly recorded instruments in the chain of title" and "charged with knowledge he would have obtained from reasonable inquiry." *Ford* at ¶ 13, quoting *Ferguson* at *5. In the context of the statute, "[k]nowledge sufficient to put a person on inquiry which would disclose unrecorded facts is sometimes called constructive notice but is treated as actual notice." *Ford* at ¶ 13, quoting *Ferguson* at *5. Nonetheless, "[a]ctual notice may be inferred from the fact that means of knowledge is available." *Ford* at ¶ 13, quoting *Ferguson* at *5; *see Campbell*, 15 Ohio St.3d at 82-83 (concluding alleged implied easement was not sufficiently apparent at time of purchase to show buyer's actual knowledge); *Safran Family Trust v. Hughes Property Mgt.*, 2018-Ohio-438, ¶ 21 (actual knowledge demonstrated where disclosures prior to purchase included easements, purchase agreement indicated buyer received disclosures, and offer made contingent upon agreement regarding easements).

{¶37} "To succeed on a summary judgment motion, the movant 'bears the initial burden of demonstrating that there are no genuine issues of material fact concerning an essential element of the opponent's case.'" *Smith v. Ray Esser & Sons, Inc.*, 2011-Ohio-1529, ¶ 9 (9th Dist.) quoting *Dresher*, 75 Ohio St.3d at 292. Here, the Zola parties alleged in their complaint that Reed Salvage had trespassed upon the Zola Property. "'A common-law tort in trespass upon real property occurs when a person, *without authority or privilege*, physically invades or unlawfully enters the private premises of another whereby damages directly ensue[.]'" (Emphasis in original.) *State ex rel. Nix*, 2011-Ohio-5636, at ¶ 24 (9th Dist.), quoting *Apel*, 83 Ohio St.3d at 19. In its answer, Reed

Salvage denied that its entry upon the Zola Property was unauthorized and asserted it had an implied easement by prior use. Consequently, as the party seeking summary judgment, Reed Salvage had the burden of demonstrating there were no genuine issues of material fact regarding its purported privilege to enter upon the Zola Property. Such includes both the existence and the enforceability of its alleged implied easement.

{¶38} A review of Reed Salvage's motion for summary judgment shows Reed Salvage did not raise an argument or point to any evidence related to the Zola parties' purported knowledge of the implied easement when Nimer purchased the Zola Property in its initial summary judgment motion. Reed Salvage only raised arguments related to the elements necessary to establish an implied easement by prior use and only pointed to evidence purporting to support to prove those elements. Reed Salvage first asserted an argument related to the Zola parties' alleged knowledge and the enforceability of its alleged implied easement against them in its reply to the Zola parties' response in opposition.

{¶39} Therefore, we conclude that Reed Salvage failed to meet their initial burden to show there remained no genuine issues of material fact regarding a material element of the Zola parties' claim for trespass. *See Dresher*, 75 Ohio St.3d at 292.

b. The Trial Court's Order

{¶40} A review of the trial court's order granting summary judgment shows the trial court determined that Zola was not a bona fide purchaser. In doing so, the trial court improperly placed the initial burden to demonstrate an absence of a genuine issue of material fact on the Zola parties, improperly weighed the evidence, and improperly made findings of fact. "[T]he burden that the nonmovant must meet to survive a motion for summary judgment is defined by the argument put forth in the original motion . . . ." *Schultz v. Fairlawn Office Park One, LLC*, 2023-Ohio-2233, ¶

26 (9th Dist.); Civ.R. 56(E). "[I]t is error for a trial court to award summary judgment on a ground not specified in the motion for summary judgment." *Shaffer v. A.W. Chesterton Co.*, 2019-Ohio-5022, ¶ 28 (9th Dist.).

{¶41} As discussed, Reed Salvage did not assert an argument related to the Zola parties' actual knowledge of the alleged implied easement in its motion for summary judgment. Yet the trial court granted Reed Salvage summary judgment based in part on Reed Salvage's assertion in its reply to the Zola parties' opposition that the Zola parties had knowledge of the alleged implied easement. The trial court did so after finding the Zola parties "presented no credible evidence regarding their knowledge or lack thereof of the easement at the time of purchase." The trial court appears to have based this finding on a single statement from Nimer's preliminary injunction hearing testimony wherein he seemed to indicate a driveway was visible along the eastern portion of the Zola Property prior to purchase. Yet our review of Nimer's entire testimony shows Nimer denied having any knowledge that the Zola Property was used for ingress and egress to the Reed Property.

{¶42} "In ruling on a motion for summary judgment, a trial court may not weigh the evidence [or] determine issues of fact." *Horner*, 2015-Ohio-47, at ¶ 10 (9th Dist.). "[T]he court is limited to examining the evidence taking all permissible inferences and resolving questions of credibility in [in the non-movant's] favor to determine whether a reasonable jury acting reasonably could find [the elements of the claim]." (Internal quotations and citations omitted.) *Covender v. State*, 2023-Ohio-172, ¶ 29 (9th Dist.). "When a court fails to consider a [witness]'s answers in context of the entire transcript, the trial court fails to construe evidence in the light most favorable to the nonmoving party." *Pearson v. Alpha Phi Alpha Homes, Inc.*, 2019-Ohio-960, ¶ 20 (9th

Dist.). Additionally, a court "may not resolve questions of credibility on summary judgment[.]" *Horner* at ¶ 10, citing *Turner v. Turner*, 67 Ohio St.3d 337, 341-342 (1993).

**3. Conclusion**

{¶43} Based on the above, we conclude that there remains a genuine issue of material fact regarding an essential element of the Zola parties' trespass claim. Specifically, whether Reed Salvage had authority or privilege to enter upon the Zola Property. Because there remain genuine issues of material fact, the trial court erred in granting partial summary judgment to Reed Salvage.

{¶44} The Zola parties' sole assignment of error is sustained.

III.

{¶45} The Zola parties' sole assignment of error is sustained. The judgment of the Lorain County Court of Common Pleas is reversed and this cause is remanded for further proceedings consistent with this decision.

Judgement reversed,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to

mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

JILL FLAGG LANZINGER
FOR THE COURT

SUTTON, J.
CONCURS IN JUDGMENT ONLY.

CARR, J.
CONCURRING IN JUDGMENT ONLY.

{¶46} I respectfully concur in judgment only. I would reverse the grant of summary judgment on the sole basis that the trial court improperly weighed the evidence and made factual determinations. I would reverse and remand for the trial court to reexamine the evidence presented in the light most favorable to the non-moving party as required under Civ.R. 56(C).

APPEARANCES:

THEODORE J. LESIAK, Attorney at Law, for Appellant.

STEPHEN M. BOSAK, JR., Attorney at Law, for Appellee.